**HUMPHREY et al. v. NATIONAL FIRE INS. CO. OF HARTFORD, CONN.**
**(No. 221–3355.)**

(Commission of Appeals of Texas, Section B. June 1, 1921.)

**1. Insurance ⬤➣308, 548 — Anti-technicality statute not applicable to breaches which could in no event contribute to loss, such as breach of provision for examination after loss.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a, providing that no breach by insured of warranty or condition of fire insurance policy shall avoid it unless contributing to the loss, does not apply to any provision the breach of which could in no event contribute to loss, and hence does not apply to breach of condition that insured shall submit to examination after fire occurs, as such breach could not contribute to the fire.

**2. Insurance ⬤➣548 — Policy requirement of examination of insured after loss held a material condition.**

A fire insurance policy provision requiring insured to submit to examination after loss is a material one, and if breached the insurer would be deprived of a valuable right for which it had contracted.

**3. Abatement and revival ⬤➣40 — Insurance ⬤➣615—Pleading ⬤➣111—Refusal to submit to examination after loss does not avoid policy, but only suspends right of recovery until examination, and hence is pleadable in abatement, not in bar; sustaining plea in abatement effective only as dismissal of premature action.**

Failure or refusal to submit to examination after loss does not bar recovery, but merely suspends the right of recovery until the condition of examination is complied with; and such failure or refusal is therefore to be pleaded in abatement, and not in bar, and, if the plea be sustained, its only effect is dismissal of suit as prematurely brought.

**4. Abatement and revival ⬤➣40, 85—Plea of failure to submit to examination, being in abatement, waived if not made at proper time.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1902, 1909, 1910, 1947, and rules 7 and 24 for District Courts (142 S. W. xvii, xix), as to order of pleas in abatement, where, in action on fire insurance policy, failure of insured to submit to examination was not pleaded except as one of several special defenses, in insurer's answer, it was not filed in due order, as a plea in abatement, and not being called up at the first term of court, and no special ruling being asked thereon before a trial on the merits, the plea was waived.

**5. Insurance ⬤➣548 — Requirement that insured submit to examination must be reasonably enforced.**

A provision in a fire policy requiring insured to submit to examination after loss may be availed of by insurer only if it fixes a reasonable time and place for such examination,

whether such qualification is expressed in the policy or not.

**6. Insurance ⬤➣640(2) — Insurer can defend on ground of insured's failure to submit to examination only if pleading and proving that the time and place of examination were reasonable.**

To avail itself of the failure of insured to submit to examination after loss under a fire policy, insurer must not only plead the policy clause providing for examination, but must plead and prove that it fixed a reasonable time and place for such examination.

**7. Insurance ⬤➣665(3) — Evidence held to support jury finding that time and place fixed for examination were unreasonable.**

In action on a fire insurance policy, evidence *held* to support a finding of the jury that the time and place fixed by insurer for insured's examination after loss were unreasonable.

**8. Insurance ⬤➣548—Insured has right to have attorney present at examination after loss.**

Under a fire insurance policy requiring insured to submit to examination after loss, it is insured's right to have his or her attorney present at the examination.

**9. Insurance ⬤➣548—Insured, failing to submit to examination after loss on reasonable notice, may do so later.**

Insured, refusing to comply, even on reasonable notice, with a fire policy requirement of examination after loss, could later recede from that position and offer to submit to such examination.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by Julia C. Humphrey and husband against the National Fire Insurance Company of Hartford, Conn. Judgment for plaintiffs was reversed and rendered by the Court of Civil Appeals (211 S. W. 811), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

Marsene Johnson, Elmo Johnson, Roy Johnson, and Marsene Johnson, Jr., all of Galveston, and Black & Smedley, of Austin, for plaintiffs in error.

Mart H. Royston, of Galveston, for defendant in error.

POWELL, J. Julia C. Humphrey, joined pro forma by her husband, sued the National Fire Insurance Company of Hartford, Conn., in the district court of Galveston county, Tex., for the recovery of $1,500 due under a policy issued by the latter to her on July 10, 1915, covering her separate personal property located in her rented home in the city of Galveston. The insured property was almost totally destroyed by fire in the early morning hours of January 1, 1916. The petition was in the usual form of a suit for recovery of damages on a fire insurance policy.

---

⬤➣For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The defendant in error, among other defenses, alleged a violation of the following provisions of the policy, to wit:

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, and subscribe the same, and, as often as required, shall produce for examination all books of account, bills, invoices and other vouchers or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative and shall permit extracts and copies to be made thereof."

And again:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within two years next after the fire."

The case was submitted to the jury upon special issues, to which answers were returned as follows:

"(1) What was the total value of the property covered by the policy in the house at the time of the fire? Answer: $3,281.00.

"(2) What was the amount of loss and damage by fire of the property covered by the policy? Answer: $2,500.00.

"(3) Was any other request ever made of Mrs. Julia C. Humphrey to submit herself for examination by the agents of the company, than such as is testified to by witness Bucklew? Answer: No.

"(4) Was the time designated in the notice given by the witness Bucklew to Mrs. Humphrey for her to submit herself for examination by the agents of the company a reasonable time? Answer: Unreasonable.

"(5) Did Mrs. Humphrey knowingly refuse to submit herself to examination by agents of the company? Answer: Yes."

Upon the jury's findings, the court rendered judgment for plaintiff in error in the sum of $1,250, that being one-half of the $2,500 assessed by the jury as her loss and damage. She had two policies, each for the sum of $1,500, and defendant in error was in no event liable for more than half of said total loss.

Defendant in error appealed from said judgment to the Court of Civil Appeals at Galveston, which court reversed and rendered the judgment of the trial court because the jury had found that Julia Humphrey, the insured, had knowingly refused to submit herself to examination by agents of defendant in error on January 3, 1916. See 211 S. W. 811. The same Court of Civil Appeals had reversed and remanded a similar judgment in this case on a former appeal. See 199 S. W. 865.

Plaintiffs in error, following the last judgment of the Court of Civil Appeals, revers-

ing and rendering their judgment, sued out a writ of error in due course to the Supreme Court, which was granted.

The controlling questions on this appeal are involved in the construction of the provision of the policy with reference to examination of the insured, and already set out in hæc verba herein.

[1] Plaintiffs in error contend that said provision of the policy is within the purview of article 4874a (Acts of 1913) of Vernon's Sayles' Ann. Civil Statutes of the State of Texas, and is therefore precluded as a defense. Said article of the statutes reads as follows:

"That no breach or violation by the insured of any of the warranties, conditions or provisions of any fire insurance policy, contract of insurance, or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property."

We cannot agree to this contention. Several months after the writ was granted in this case, said statute was construed by section A of the Commission of Appeals, with the approval of the Supreme Court, and it was held:

"It seems conclusive that no promissory warranties, conditions, or provisions of a fire policy, the breach of which could in no event contribute to bring about the loss of the property insured, are within the purview of the act invoked." McPherson v. Fire Ins. Co., 222 S. W. 211.

The doctrine announced in the case of McPherson v. Ins. Co., supra, was followed by section A of the Commission of Appeals in the case of Ins. Co. v. Levy, 222 S. W. 216, and by section B of the Commission of Appeals in case of Insurance Co. v. Waco Co., 222 S. W. 217.

So, whatever may have been the conflicting views in this connection heretofore, the rule is now well settled. The provision authorizing an examination of the insured after the fire occurs could, in no event, contribute to the fire. Therefore it is not within said statute.

[2] We are also of the view that the Court of Civil Appeals in this case has correctly held that the provision in question is a material one in such contracts, and that if the same were breached, the insurer would be deprived of a valuable right for which it had contracted. R. C. L. vol. 14, p. 513; notes to 52 L. R. A. 425, 426; Gross v. Ins. Co. (C. C.) 22 Fed. 74; Fleisch v. Ins. Co., 58 Mo. App. 596.

Before proceeding to a discussion of whether or not there was any breach of said provision by the insured, we think it best to consider the same and ascertain the nature

thereof, and the penalty for its breach. The insured agrees, at reasonable times and places, as often as required, to submit to examination by agent of insurer, and to submit all relevant books of account, bills, invoices, vouchers, etc. It is clear that the chief purpose of this privilege to the insurer is the ascertainment and adjustment of the loss which has already occurred. The insurance company, in its policy, evidences in many ways its desire to avoid the necessity of litigation in the settlement of its losses. It reserves the right to have the benefit of the examination provided for before suit can be sustained.

[3] What is the penalty for breach of said provision? In reading the policy in question, it will be found that in many instances forfeiture is the penalty for breach of warranties and conditions. In other cases, it is provided that in certain events the company will not be liable. But, for a violation of the provision for an examination of the insured, it is only provided that—

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within two years next after the fire."

It is evident, that the only penalty for breach of said provision is to delay the time when suit may be sustainable. If the insured refuses to submit to the examination, when reasonably requested so to do, he only delays the time when he can recover on his policy. He only postpones the date when he can enforce payment. If he offers to submit himself to the examination, after a refusal, any time within two years after the fire, he can then go into court. We are of the view that this provision is in no sense one in bar of recovery, but one in abatement, and that the defense should be so pleaded. If such a plea should be sustained by the court, its only effect would be a dismissal of the case because prematurely brought. That this provision is a plea in abatement, rather than one in bar, is not only clear to us from the wording of the same, but it has been so construed by many appellate courts, to a few of which we shall refer.

Justice Pelham of the Court of Appeals of Alabama, in case of Fire Ins. Co. v. Toilet Goods Co., 10 Ala. App. 395, 64 South. 635, speaks in this connection as follows:

"It was held in Weide v. Germania Ins. Co., Fed. Cas. No. 17,358, 1 Dill. 441, that the failure or refusal of the insured to submit to an examination on oath under the usual stipulations of a policy containing such a requirement does not work a forfeiture of the policy, but only causes the loss not to be payable until the condition is complied with, and that such refusal should be pleaded in abatement and separately from defenses in bar of recovery in all events at any time. The effect of the refusal of the assured to answer questions on oath under the terms of the policy is not to forfeit or avoid the policy and bar recovery on it, but to suspend the right of payment or recovery until the answers are given in compliance with the condition. Objection that the action is prematurely brought, that the assured refused to submit to an examination, should be raised by plea in abatement. 19 Cyc. 926 (3). We think that, for the reasons given, the trial court is not to be put in error for sustaining demurrers to the pleas numbered 2, 4, 5, and 6."

Justice Atkinson, of the Supreme Court of Georgia, in the case of Rosser v. Ins. Co., 101 Ga. 716, 29 S. E. 286, uses the following significant language:

"The defendant, in its plea, alleged that the suit had been brought before the expiration of the time limited in the policy within which, after receiving proofs of loss, it was not bound to pay. This plea, if sustained, would have had the effect only to defeat this particular action. The cause of action itself would still have survived, and the plaintiff could, after the expiration of the time limited in the policy in which the insurer was not bound to pay, bring his action anew. It was a plea in abatement. It alleged a ground for abating the suit in the present case, but was not a good defense to the action upon its merits."

Justice Mitchell of the Supreme Court of Pennsylvania, in the case of Plate-Glass Co. v. Ins. Co., 189 Pa. 255, 42 Atl. 138, 69 Am. St. Rep. 810, announces the following relevant rule:

"The policy provides that, in case of disagreement as to the amount of loss, it shall be ascertained by appraisers, and, further, that no action shall be brought on the policy until after compliance with all its requirements, among which is that relating to appraisers. Such appraisement, or the effort to have it, would be at the most a condition precedent to an action by the insured, and the failure to have it a ground for a plea in abatement by the company."

It is clear to us, as stated by the authorities just cited, that provisions like the one in question present only matters in abatement, and that if such provisions are pleaded and sustained, the only result would be a dismissal of the suit as having been prematurely brought.

The Supreme Court of Washington goes even further, and holds, in construing exactly the same provisions, as follows:

"When we look to the words of the policy, which it is well settled must be strictly construed against the insurance company, we do not find that it provides that no action shall be 'commenced,' but that no action shall be 'sustainable.' At the time plaintiffs sought to sustain their action by proofs, the examination had been signed and was in the hands of the defendant. All that the policy required had been per-

formed." Barbour v. Ins. Co., 101 Wash. 46, 171 Pac. 1030.

The Washington case indicates that compliance with this provision of the policy might be had after the suit has been instituted and without the necessity of a dismissal of the case, even though such a plea in abatement be sustained. We cite this case only to show the trend of authority in some quarters. We do not desire to be understood as going this far, although we are heartily in accord with the Texas authorities which uniformly hold that forfeitures are not favored.

[4] If the said provision is one in abatement, then it should be pleaded in due order and action asked thereon in compliance with the statutes and court rules in such cases provided. They are:

Article 1910 of Vernon's Sayles' Revised Civil Statutes of Texas, reads as follows:

"Pleas to the jurisdiction, pleas in abatement, and other dilatory pleas and demurrers, not involving the merits of the case, shall be determined during the term at which they are filed, if the business of the court will permit."

Article 1947 of the same Statutes reads as follows:

"When a case is called for trial, the issues of law arising on the pleadings, and all pleas in abatement, and other dilatory pleas remaining undisposed of, shall be determined; and it shall be no cause for the postponement of a trial of the issues of law that a party is not prepared to try the issues of fact."

Rule 24 for the District Courts (142 S. W. xix) provides as follows:

"All dilatory pleas, and all motions and exceptions relating to a suit pending, which do not go to the merits of the case, shall be tried at the first term to which the attention of the court shall be called to the same, unless passed by agreement of parties with the consent of the court; and all such pleas and motion shall be first called and disposed of before the main issue on the merits is tried."

Due order of pleading is essential, and pleas in abatement must precede pleas to the merits or in bar. Articles 1902 and 1909 of Vernon's Sayles' Revised Civil Statutes, and Rule No. 7 for the District Courts (142 S. W. xvii).

Was there any effort to comply with said statutes or court rule? The facts in this connection are:

The original petition in this case was filed January 28, 1916. The record does not disclose the date of filing or the contents of the insurer's original answer. The record does disclose the fact that the first amended answer of insurer was filed November 18, 1916. Said answer is not in the record. But on the said 18th day of November, the insured filed her first supplemental petition, and it is in the record. Said petition, answering said first amended answer, shows that said answer set up two special exceptions, neither of which referred to the provision of the policy in question here. Said provision did constitute the sixth special answer in bar.

The opinion of the Court of Civil Appeals on the first appeal was handed down on December 21, 1917 (199 S. W. 865).

The insured filed her first amended original petition on March 22, 1918, and the second amended answer of defendant in error, in reply thereto, was filed next day. Said answer, in consecutive order, was as follows: A general demurrer; three special exceptions, none of which related to the provision now under discussion; a general denial and several special defenses. The third among the latter alleged a violation of the provision in issue herein.

It is quite clear that, as a plea in abatement, the same was not filed in due order, was not called up at the first term of court, and no special ruling was asked thereon before a trial on the merits. Under all those circumstances, we think this plea was waived, and that the judgment of the district court should have been affirmed.

If we are correct in viewing this plea as one in abatement, then we are sustained in our view last expressed by the opinion of the Supreme Court of Texas in the case of Blum v. Strong, 71 Tex. 321, 6 S. W. 167. On motion for rehearing, Justice Gaines wrote vigorously, concluding as follows:

"We therefore conclude that the appellants, by proceeding to trial upon the merits of the case, without specially invoking the action of the court upon the plea in abatement, must be held to have waived it; and that it matters not so far as the disposition of this appeal is concerned, whether it should be considered a sufficient plea or not."

We believe this is one plea in abatement in which the rule requiring action at the first term of court after suit is filed should be rigidly enforced. If this plea in abatement had been passed upon at the first term of court in 1916 and sustained, the insured could have dismissed her case, and then submitted to the examination, thereby preserving her rights. But, by not urging the plea and permitting it to pass along from term to term, two years might elapse, and then the insured lose her right of action entirely. If the plea be sustained after the lapse of two years following the fire, and the cause then dismissed, a new suit would then be barred. It is evident that this plea in abatement should be handled by the court in strict compliance with the statutes and court rules covering pleas in abatement. Otherwise, gross injustice would result.

[5] But, whether a plea in abatement or not, we think this provision of the policy

231 S.W.—48

cannot affect the right of the insured to recover unless she violated an attempt on the part of the insurance company to reasonably enforce it. In construing this provision, we are in hearty accord with the opinion of the Court of Appeals of New York State, in the case of Porter v. Ins. Co., 164 N. Y. 504, 58 N. E. 641, 52 L. R. A. 424. In that case, in construing this same provision, the court concludes as follows:

"Finally, it should be noted that the condition alleged to have been violated in this case applied only after the capital fact of a loss. The object of the provision was to prescribe the manner in which an accrued loss was to be adjusted and ascertained. The liability of the defendant having become fixed by the happening of the event, upon which the contract was to mature, conditions which prescribe methods and formalities for ascertaining the extent of it or for adjusting it, are not to be subjected to any narrow or technical construction, but construed liberally in favor of the insured."

We think that, under the express terms of this provision, before the insured is under any duty to submit to such an examination, the insurance company must fix a reasonable time and place therefor. But, if the provision does not expressly so require, then it should be so construed. In passing upon a provision of a similar nature, the Supreme Court of Minnesota concurs in our view. See Johnson v. Ins. Co., 129 Minn. 18, 151 N. W. 413, L. R. A. 1916F, 1149, Ann. Cas. 1916A, 154. In fact, the Court of Civil Appeals, in its opinion in this case, does not seem to take issue with us.

[6] The jury did find that the insured knowingly refused to submit herself to the examination on January 3, 1916. But they expressly found, also, that the time set was unreasonable. In order to avoid the effect of that finding the Court of Civil Appeals held that the issue was not authorized by the pleadings or supported by the testimony, and reversed and rendered the judgment of the district court. Our answer to said views of the Court of Civil Appeals is:

In the first place, we think before the insurance company can impose any obligation upon the insured in this connection, it must plead its defense and prove it. It did plead the provision of the policy. As we view it, it could not discharge its burden of proof in establishing said defense, until it had shown the jury that the time and place fixed were reasonable. In other words, the burden of pleading and proof in this particular matter was with the insurance company.

[7] Was the jury justified, under the facts in evidence, in finding that the time fixed for the examination was unreasonable? We think they were amply justified in so finding. What are the facts in this connection, construed in the strongest light for the insur-ance company? The demand served upon insured was as follows:

"Jan. 3, 1916.

"Mrs. Julia C. Humphrey, née Peebles, Galveston, Texas—Dear Madam: You are hereby demanded to appear at Charles Neynaber a Notary Public Office 221–22nd Street, Galveston Texas at 2:30 p. m. of this date and there submit to examination under oath relative to a fire and the alleged damage caused by said fire to the property insured under policy No. 56086 of the National Fire Insurance Co. of Hartford, Conn.

"The said fire is reported to have occurred on Jan. 1, 1916, in the house located at 2901 Avenue G.

"This demand is made in accordance with the above named and numbered policy and I would particularly call your attention to lines 81 to 85 inclusive.

"[Signed]    National Union Fire Ins. Co.,
"By Sam Bucklew."

Lines 81 to 85 of the policy referred to are set out in the provision of the policy under discussion and includes the duty of bringing to the examination all books of account, bills, invoices, and other vouchers, etc.

It is somewhat difficult to determine from the record just when this notice was actually delivered to insured. Neynaber, the insurer's notary, said it was delivered on Monday or Tuesday just after the fire, and the insured agreed to come for the examination the next day after notice was delivered. Bucklew, the adjuster of the company, testified he gave her this notice on Sunday afternoon about 4 o'clock, and that the insured refused to appear at the time he had fixed, but told him she would meet him at the office of her attorney on Monday morning. It is not essential to settle these conflicts in the testimony. The law of Texas imposed no duty upon the insured to take any steps until Monday morning in her preparation to comply with this demand. The law justly recognizes the right of our people to rest on Sunday. The adjuster himself knew this, for he says he dated the notice on Monday, the day following, so he would be sure it was in legal form.

So, let us see the situation as it confronted the insured on Monday morning, January 3. She was required to appear for the examination at 2:30 p. m. that day. As a woman who had just lost her home and nearly all her clothes, she probably had other urgent duties that shortly after the fire. Aside from those facts, however, the notice itself required that she bring books of account, invoices and vouchers covering the lost property. The jury might well have found it impossible for her to have done this in half a day. The property consisted of furniture and household goods in general. It takes time to get up invoices of the numerous articles involved in property of this character.

[8] Again, the proof shows she wanted to

consult her attorney. She had a right to do this. In our view, it was her privilege to have him present at the examination. The provision does not specify a private examination. We are in full sympathy with the view announced by the Court of Appeals, in Missouri in the case of Thomas v. Insurance Co., 47 Mo. App. 169. The court there says:

"When insurance companies proceed to take these examinations, it is tantamount to a declaration of intention to contest the claim, and it would seem the part of prudence that the assured have his attorney at hand when anything so important is being done. To deny so reasonable a request bears the appearance of an attempt to take an undue advantage of the plaintiff in a secret examination, or an effort to manufacture a mere technical defense for this case. It cannot be allowed to succeed."

That she did not have time to gather the data required by the insurance company and arrange with her own counsel before 2:30 p. m. that day seems to us almost an inevitable conclusion. Certainly, the jury was fully justified in finding the time fixed unreasonable. That being true, the insured, as before stated, owed no duty to respond to the demand, and this provision cannot avail the company anything in this instance. We think the Court of Civil Appeals erred in ignoring this finding of the jury and rendering judgment against the insured.

[9] But, even if the time fixed for the examination had been reasonable, she could have refused to comply, and later tendered herself to the company. That would have been a compliance with the provisions of the policy, in our judgment. We are sustained in this view by the Circuit Court of Appeals of the United States in the case of Insurance Co. v. Rose, 228 Fed. 290, 142 C. C. A. 582. Justice Woolley affirmed the judgment of the lower court for the insured, and spoke as follows in this connection:

"The court correctly charged that the insured was required to submit himself and his papers to examination as a condition precedent to a right of action on the policy. It appears that in November, 1912, the insured submitted himself and his papers to examination, but in December, 1912, he withdrew himself and his papers from examination. As held by the learned trial judge, the declination to submit to further examination arrested the performance of the condition precedent required of the insured, and if nothing further had been done, no right of action would have accrued to him. But in February following, the insured, contemplating suit, receded from this position and openly offered to submit himself and his papers to examination."

The undisputed facts in this case show that, while the insured failed to appear at the time set on the afternoon of January 3, she did tender herself to Neynaber on Wednesday, January 5, just two days later. He sent her to Miss Dau, saying she was the one to examine her. The insured submitted to an examination by the representative of the state fire marshal of Texas at that time. We say that these facts are undisputed. They are testified to by the insured, by one of her attorneys, and by Miss Dau. Neynaber said he would not deny it. So, it appears that very quickly after the time fixed by the company, she did go to the very office it had designated and tendered herself to the very notary and stenographer it had employed for this work. If these agents of the company did not then conduct the examination the company desired, they should, at least, have notified their principal of her offer to submit to the examination. If they had done that, it would then have become the duty of the company to make an effort to fix another date for the examination. If its agents failed in the performance of their duty, the insurance company cannot complain.

The jury found that the insurance company never attempted to fix another date for an examination. Consequently, there is no merit, as we view it, in the defense pleaded.

The insured contends that her appearance and testimony upon the first trial was a compliance with this provision, and that the suit could be sustained by the time of the second trial. We do not think it necessary to pass upon this point. We will say, in passing, that we find no evidence in the record showing any effort on the part of the insured to conceal any information. On the very morning of the fire, she had the company's agent meet her at the scene of the fire and talked with him freely. She and her attorney both discussed the matter fully with the adjuster. Her attorney visited the scene of the fire with the latter on January 3. Two days later she offered herself for examination to the agents the company had designated. She did submit to an examination conducted by an agent of the state fire marshal of Texas. It seems that she testified on the first trial of this cause in the district court. Consequently, long before the final trial, the company should have had all the information it desired. Certainly, it could have had it by the exercise of reasonable diligence. We find it difficult to escape the conclusion that the insurance company was more desirous of preserving its defense than of ascertaining the information it alleged it desired. It occurs to us that the judgment of the Court of Civil Appeals would work a very grave injustice.

For the many reasons discussed, we think the Court of Civil Appeals erred in reversing and rendering the judgment of the trial court. As we view it, the latter court entered the only proper judgment.

Therefore, we recommend that the judg-

ment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.