**In re FOREMOST COUNTY MUTUAL INSURANCE COMPANY and Jim Doland.**

**No. 09–05–122 CV.**

Court of Appeals of Texas, Beaumont.

Submitted May 19, 2005.

Decided Aug. 11, 2005.

E. John Gorman, Bradford W. Irelan, Irelan Hargis PLLC, Houston, for relators.

E. Hart Green, Weller, Green, Toups & Terrell, LLP, Beaumont, for real party in interest.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

PER CURIAM.

This mandamus proceeding arises from an insurance company's denial of a fire loss claim made under a homeowner's insurance policy. The company denied the policyholder's claim after he refused to submit to an examination under oath. The company sought an abatement of the underlying suit to obtain the examination. After the trial court denied the company's plea in abatement, the company petitioned this Court for a writ of mandamus. The primary questions we must resolve are whether the trial court abused its discretion in refusing to abate the case and whether relators have an adequate appellate remedy. For the reasons stated below, we conditionally grant the writ of mandamus.

Foremost County Mutual Insurance Company insured Kenneth Whitney's mobile home and its contents through a "mobilowner's policy." A fire destroyed Whitney's mobile home and Foremost ultimately denied Whitney's claim. Whitney filed suit against relators, Foremost and Jim Doland (jointly referred to as "Foremost"). In his petition against the company, Whitney alleges breach of contract and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act ("DTPA"); against Doland, Whitney alleges DTPA violations. Foremost contends that Whitney's suit is improper because he failed to comply with the policy's conditions precedent that required him to submit to an examination under oath ("EUO") prior to filing suit.

In the first two weeks after a fire destroyed Whitney's mobile home on November 25, 2003, several events occurred. Whitney notified Foremost about the loss on the day of the fire. The next day, November 26, Doland inspected the site and Whitney authorized the release of his financial and employment records. On December 8, 2003, thirteen days after the fire, Foremost sent Whitney a "reservation-of-rights" letter stating that "a potential coverage issue" existed and reserving Foremost's right to assert all terms and provisions of the policy. The letter further disclaimed Foremost's intent to waive any of its rights or defenses and explained that Foremost's "preliminary investigation in conjunction with cause & origin experts indicate the fire cause may not be of a[n] accidental nature. Please note the investigation of this loss is continuing." In its letter, Foremost also asked Whitney to fully cooperate with the Company's investigation.

In January 2004, Foremost continued its investigation. On January 9, 2004, approximately six weeks after the fire, Foremost told Whitney it was still investigating and requested that Whitney provide additional documents, namely "the completed property summary sheets along with any receipts for additional living expense." Around January 22, 2004, Doland received the final report from the cause and origin investigator and a report from investigators reviewing Whitney's financial status. From those reports, Doland concluded that arson may have been the cause of the fire and that Whitney, because of his proximity to the fire, was the most likely suspect. Doland requested his supervisor to approve the taking of Whitney's EUO.

In February, Foremost began its attempts to schedule Whitney's EUO. On February 17, 2004, Foremost's outside counsel asked Whitney directly for his

EUO. On February 26, 2004, after learning that Whitney had retained counsel, Foremost's outside counsel asked Whitney's counsel for assistance in scheduling the EUO. Whitney refused and informed Foremost that it had waived its right to obtain the examination.

After Whitney declined to cooperate, Foremost ultimately denied coverage and Whitney filed suit. Because the trial court denied Foremost's plea in abatement, Foremost filed its petition for writ of mandamus. Foremost contends the trial court abused its discretion by not abating the underlying suit to allow Foremost to examine Whitney under oath as provided by the policy's conditions precedent. Foremost further contends that it has no adequate remedy by appeal.

The policy includes the following paragraphs:

PART IV—CONDITIONS

All obligations of the Company under this policy are subject to the performance by the Insured of the following conditions:

**A. General Conditions Applicable to Both Parts of the Policy**

. . .

**4. Assistance and Cooperation.** The Insured and any person interested in or claiming any benefit under this policy shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution, indemnity or recovery against any person or organization who may be liable for any injury, damage or loss with respect to which insurance is afforded under this policy.

**5. Proof of Loss.** The Insured or someone in his behalf shall file proof of loss with the Company within 91 days after the occurrence of the loss, unless such time is extended in writing by the Company and upon the Company's request, exhibit the damaged property to duly authorized representatives of the Company, and submit to and subscribe examinations under oath conducted by anyone designated by the Company, produce for the Company's examination all pertinent papers, documents and records (or certified copies thereof, if originals be lost), permitting copies thereof to be made by or on behalf of the Company all at such reasonable times and places as the Company from time to time may designate. . . .

. . .

**8. Action Against the Company.** No payment shall be due by the Company under this policy and no action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this policy, nor until 30 days after proof of loss is filed and that amount of loss is determined as provided in this policy. . . .

 When we interpret an insurance policy, we employ the rules of contract construction. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law. . . ." *Schaefer*, 124 S.W.3d at 157(citations omitted). If a contract is not ambiguous, the words used in the contract are to be given their ordinary meaning. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). For an event to constitute a "condition precedent" under a contract, the contract must provide that the event shall "happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex.1992).

Paragraph IV A. 5. of Whitney's insurance policy provides that a claimant, upon the company's request, shall "submit to and subscribe examinations under oath conducted by anyone designated by the Company. ..." Paragraph IV A. 8. provides that "no action shall lie against the Company unless, as a *condition precedent* thereto, the Insured shall have fully complied with all of the terms of this policy ...." (emphasis added). These policy provisions clearly require Whitney to provide an EUO upon the Company's request and to do so before filing suit. Policy terms requiring a policyholder to submit to an EUO before filing suit are valid as we previously determined in *State Farm General Ins. Co. v. Lawlis*, 773 S.W.2d 948, 949 (Tex.App.-Beaumont 1989, no writ). *See also Philadelphia Underwriters' Agency v. Driggers*, 111 Tex. 392, 238 S.W. 633 (1922).

However, Whitney argues that Foremost waived its right to obtain his EUO because Foremost's request was untimely. Whitney contends that Foremost was required to tell him it wanted an EUO within fifteen days after Foremost received notice of his claim. Whitney bases his waiver argument on article 21.55 of the Texas Insurance Code ("Code") as well as certain policy provisions.

Article 21.55 of the Texas Insurance Code, entitled, "Prompt Payment of Claims," requires that, within fifteen days of receiving a claim notice, an insurer shall: "(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant. Additional requests may be made if during the investigation of the claim such additional requests are necessary." Tex. Ins. Code Ann. art. 21.55 (Vernon Supp.2005).

The plain language of the statute negates Whitney's "fifteen day" waiver argument. Under the statute, the company may request additional information after the fifteen day period expires. While the company must begin investigating a claim and request initially required information from the claimant within fifteen days of receiving a claim notice, the statute also allows the company to request additional information that becomes necessary during the course of the investigation. Thus, Whitney's argument ignores the statutory language allowing the insurer to make additional requests for information "if during the investigation of the claim such additional requests are necessary." Art. 21.55 § 2(a)(3).

The EUO's usefulness is not at issue as Whitney does not contest that it would have assisted the investigation. Foremost contends it reasonably determined it needed more information, namely the EUO, to finish investigating Whitney's claim. In addition, Foremost asserts it decided to seek an EUO after the final cause and origin report made it necessary to rule out Whitney as a suspect. Logically, Whitney's EUO would provide information pertinent to this determination.

Whitney's waiver argument also ignores certain statutory language regarding the statute's purpose, which is to promote prompt payment of insurance claims. Art. 21.55 § 8. Thus, an insurer who violates article 21.55 does not risk waiver of contractual rights, as urged by Whitney, but rather risks incurring penalties and attorney's fees for unduly delaying the payment of a valid claim. *See Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344–45(Tex. App.-Corpus Christi 2004, pet. denied); Art. 21.55.

Whitney urges us to find that an insurer who does not request an EUO within fif-

teen days of receiving a claim waives the right to obtain an EUO. This construction would not be based on the statute's language and would be unintended by the legislature. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000)(legislative intent is determined from statute's plain and common meaning); *see* Art. 21.55. Whitney cites no cases, nor have we found any, in which an appellate court has determined that a 21.55 violation results in a waiver of contractual rights. We find Foremost did not waive its right to seek an EUO by virtue of its alleged violations of the Insurance Code.

■ Whitney also contends Foremost waived its rights under the policy to obtain Whitney's EUO. Policy provision Part V, paragraph C.1. contains the fifteen day limit upon which Whitney relies and is entitled "The Company's Duties After Loss." The paragraph states:

1. Within 15 days after the Company receives the insured's written notice of claim, the Company must:

 a. acknowledge receipt of the claim. If the Company's acknowledgment of the claim is not in writing, the Company will keep a record of the date, method and content of the Company's acknowledgment.

 b. begin any investigation of the claim.

 c. specify the information the insured must provide in accordance with the Conditions and Provisions of this policy.

The Company may request more information, if during the investigation of the claim such additional information is necessary.

Whitney asserts that construing the policy to allow Foremost to request additional necessary information would be an unreasonable construction that would render the

fifteen day rule "meaningless" and violate the rules of contract construction. However, the policy requirement for Foremost to "specify the information the insured must provide" within fifteen days after the company receives notice of the claim is a "general rule." The exception to this general rule is the policy provision that allows the company to request additional necessary information that it may need to reasonably investigate claims. Texas courts have long recognized that exceptions place limitations on general rules or provisions. *See Reliance Ins. Co. v. Naman,* 118 Tex. 21, 6 S.W.2d 743, 745, (1928)(an exception "is something taken out of the instrument, whether statute, grant, or contract"). Here, the exception does not render the general rule "meaningless;" instead, it provides for an instance in which the "fifteen day" rule does not apply. If no additional information is necessary, then the general rule of the policy—the fifteen day rule—applies.

■ Here, the policy language "is worded so that it can be given a definite or certain legal meaning" and, thus, is not ambiguous. *Schaefer,* 124 S.W.3d at 157. The language clearly allows the company to seek additional necessary information after the expiration of the fifteen day period. "When construing the policy's language, we must give effect to all contractual provisions so that none will be rendered meaningless." *Id.* We do not isolate a single phrase, sentence, or provision and consider it apart from other policy provisions. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). Whitney's interpretation of the policy recognizes only the general rule—the fifteen day rule—and renders the exception meaningless.

Moreover, the law on waiver is well established. As explained by the Texas Supreme Court:

Waiver is defined as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, as in this case, the question becomes one of law.

*Jernigan v. Langley,* 111 S.W.3d 153, 156–57 (Tex.2003) (citations omitted). Applying *Jernigan,* we determine Whitney's contractual waiver argument as a matter of law.

Here, the "surrounding facts and circumstances" pertinent to Whitney's waiver-by-delay argument are undisputed. *Id.* The parties do not dispute that Foremost made its request to obtain Whitney's EUO more than fifteen days after receiving notice of his loss or that Foremost also sent Whitney a letter specifically disclaiming any intent to waive its rights or defenses. Further, the record shows that Foremost waited to make a decision about whether to seek Whitney's EUO until after it received the cause and origin report around January 24. The parties agree that Foremost first requested Whitney's EUO on February 17, approximately three weeks after receiving the report and eighty-four days after the fire. We find that Foremost, by waiting until February to determine whether to request Whitney's EUO in a claim possibly involving arson, did "nothing inconsistent with an intent to rely upon" its right to obtain the examination. *Id.* Accordingly, we find as a matter of law that Foremost did not waive its contractual right to take Whitney's EUO.

Having determined the waiver question in Foremost's favor, we now consider whether the trial court erred in refusing to grant abatement to allow Foremost to obtain Whitney's EUO. We find the trial court erred. We previously decided this question in *State Farm General Ins. Co. v. Lawlis,* 773 S.W.2d 948, 949(Tex.App.-Beaumont 1989, no writ). Relying on *Philadelphia Underwriters' Agency v. Driggers,* 111 Tex. 392, 238 S.W. 633 (1922) and *Humphrey v. National Fire Ins. Co.,* 231 S.W. 750 (Tex.Com.App. 1921, judgm't adopted), we said in *Lawlis* that "[i]nsurance policy provisions requiring the insured's submission to examination under oath as a condition precedent to sustaining a suit on the policy are valid. The insurer's proper remedy to enforce the condition precedent is abatement rather than bar. Relator exercised its contractual right to require an oral examination under oath and there is no evidence that this right was ever waived." *Lawlis,* 773 S.W.2d at 949 (citations omitted). In *Lawlis,* we conditionally granted the company's petition for mandamus and provided that it would be issued only if the trial court failed to grant abatement. *Id.*

*Lawlis* controls here. Just as in *Lawlis,* Whitney's policy required him to submit to an EUO as a condition precedent to filing suit and Whitney failed to do so. Thus, under *Lawlis,* Foremost's proper remedy is abatement and mandamus will issue to enforce that remedy. *Id.*

Relying on *In re Allstate County Mut. Ins. Co.,* 85 S.W.3d 193(Tex.2002) and *Abor v. Black,* 695 S.W.2d 564 (Tex.1985), Whitney asserts that abatement is improper. *Allstate* involved an automobile insurance appraisal provision. *Allstate,* 85 S.W.3d at 195. While finding that the trial court's denial of appraisal was error and subject to mandamus, the *Allstate* Court

also stated that "the failure to grant the motion to abate is not subject to mandamus. In any event, the proceedings need not be abated while the appraisal goes forward." *Id.* at 196 (footnotes omitted). In *Abor*, the trial court denied the plaintiff's request for abatement of a declaratory judgment action. *Abor*, 695 S.W.2d at 565. The *Abor* Court declined to issue a writ of mandamus "to supervise or correct incidental rulings of a trial judge" because the plaintiff had an adequate appellate remedy. *Id.* at 566–67. The Court noted that "incidental rulings" included those on pleas in abatement. *Id.* at 567.

But both *Allstate* and *Abor* are distinguishable. Neither case involved a dispute for which abatement was the established remedy. Here, to the contrary, abatement has long been the established remedy to enforce an EUO clause. *See Philadelphia Underwriters' Agency v. Driggers*, 111 Tex. 392, 238 S.W. 633 (1922); *Humphrey v. National Fire Ins. Co.*, 231 S.W. 750 (Tex.Com.App.1921, judgm't adopted).

■ To be entitled to mandamus relief, Foremost must meet two requirements. It must show that (1) the trial court committed a clear abuse of discretion and (2) it has no adequate remedy by appeal. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005)(citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992)).

■ Regarding the first requirement, the *Walker* Court explained that a trial court abuses its discretion if " 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law' " or if it clearly fails to correctly analyze or apply the law. *Walker*, 827 S.W.2d at 839, 840 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985)). Further, a trial court does not have the discretion to make an

erroneous legal conclusion even in an unsettled area of law. *See Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996). Here, the trial court improperly accepted Whitney's statutory and contractual waiver arguments regarding Foremost's right to take Whitney's EUO. As a result, the trial court erred when it declined Foremost's request to abate the underlying suit. *See Walker*, 827 S.W.2d at 840; *see Lawlis*, 773 S.W.2d at 949. Foremost, thus, has established the first mandamus prong.

Regarding "no adequate remedy by appeal," the *Prudential* Court recently acknowledged that this second requirement "has no comprehensive definition." *Prudential*, 148 S.W.3d at 136. In granting mandamus relief to enforce contractual jury waivers, the Court explained that determining whether a party has an adequate remedy by appeal requires a "careful balance of jurisprudential considerations" that involves both "public and private interests." *Id.* When "the benefits [of mandamus review] outweigh the detriments," appellate courts must consider whether the appellate remedy is adequate. *Id.* "[W]hether an appellate remedy is 'adequate' so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules." *Id.* at 137.

The *Prudential* Court concluded that mandamus review of interlocutory rulings would be appropriate for "significant rulings in exceptional cases." Such review could be "essential to preserve important substantive and procedural rights ..., allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of im-

properly conducted proceedings." *Prudential,* 148 S.W.3d at 136.

 Here, the public interest factor in granting mandamus and abatement is strong. An insurer has the duty to reasonably investigate a claim. *See State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 47 (Tex.1998). "The scope of the appropriate investigation [by the insurance company] will vary with the claim's nature and value and the complexity of the factual issues involved." *Id.* at 44–45. Enforcing EUO clauses allows the company to conduct a more thorough investigation before it must make a determination on accepting or rejecting a claim. Had Foremost been allowed to take Whitney's EUO and complete its investigation, Foremost may have determined Whitney was not a suspect and paid the claim without the expense and time-loss involved with litigation. On the other hand, Foremost might have discovered that the fire was intentionally set by its insured, justifying it in a subsequent decision to deny the claim.

 Here, the mandamus remedy is important to preserve the insurer's contractual right to obtain an EUO prior to suit, a right long recognized in Texas. By requiring abatement to allow Foremost to obtain Whitney's EUO, we "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Prudential,* 148 S.W.3d at 136.

Accordingly, we find that the trial court has no discretion to deny abatement to allow Foremost to take Whitney's examination under oath and that Foremost has no adequate remedy on appeal. Accordingly, we conditionally grant Foremost's petition for writ of mandamus. We trust the trial court will comply with this opinion; the writ will issue only if it fails to do so.

WRIT CONDITIONALLY GRANTED.