**Opinion issued July 1, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-25-00101-CV

_____

## IN RE ALLIED TRUST INSURANCE COMPANY, Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

### MEMORANDUM OPINION

Real Party in Interest James Capurso filed suit against Relator Allied Trust Insurance Company after Allied denied his insurance claim for property damage. Allied filed a Motion to Compel Examination Under Oath and Appraisal, which Capurso opposed. The trial court denied Allied's motion, as well as Allied's Motion

for Reconsideration.  Allied seeks a writ of mandamus challenging the trial court's denial of its Motion to Compel Examination Under Oath and Appraisal.[1]

We conditionally grant mandamus relief.

## Background

Allied issued an insurance policy to Capurso providing coverage for his home ("Policy").  The underlying case involves a lawsuit filed by Capurso for claims arising from Allied's handling of his property damage insurance claim.[2]

Capurso filed an insurance claim on July 8, 2022, alleging damages to his property resulting from a tornado in January 2022.  One week later, a field adjuster inspected Capurso's property on behalf of Allied.  Based on the field adjuster's inspection, Allied issued a claim decision on July 29, 2022, stating that the estimated repairs for covered damage did not exceed the Policy deductible, and that other observed damage to the roof tile and garage ceiling drywall had resulted from excluded non-storm related causes.

On September 29, 2022, Capurso hired a public adjuster and demanded reinspection of the property.  Following reinspection on January 13, 2023, Allied sent Capurso a letter on January 24, 2023, again advising him that the covered

---

[1]     Allied also filed a Motion for Abatement and Protection from Discovery, but it does not challenge the denial of those motions in its Petition.

[2]     The underlying case is styled *James Capurso v. Allied Trust Insurance Company*, Cause No 2024-18525, pending in the 234th District Court of Harris County, Texas, the Hon. Lauren Reeder presiding.

damage did not exceed the Policy deductible and that the remaining damage to the roof tile and garage ceiling drywall was "not storm related."

Capurso accused Allied of doctoring the field adjuster's estimate to remove certain noted "roof repairs." Allied sent a letter to Capurso on February 24, 2023, stating it required additional information to complete the claim handling and requesting documentation of claimed repairs made to the tile roof as referenced in Capurso's correspondence. According to Allied, it received no documentation in response to this request.

On June 19, 2023, Capurso notified Allied of his intent to file a legal claim, asserting that Allied's adjuster's evaluation of the covered damage at $902.42 was "grossly under-scoped." Capurso informed Allied that according to his adjuster, the "cost of all repairs would be $616,678.77."[3] Capurso further claimed that even though Allied's letter stated that the damage to his roof was not storm related, the field adjuster had confirmed to Capurso that the field adjuster's original estimate had included roof replacement. Capurso claimed that Allied "failed to produce this [original] estimate or explain how an estimate signed by the field adjuster no longer ha[d] damage he [had] observed and reported." Capurso acknowledged that the Policy contains an appraisal clause, but he stated that "[a]t this time [he][was]not invoking appraisal" and "[i]n the spirit of compromise, [he] intend[ed] to resolve

---

[3] Allied claims it did not received Capurso's letter until August 29, 2023.

th[e] matter without any additional delay or expense." (Emphasis removed). Capurso stated that his total damages ranged from $664,421.79 to $1,917,635.98, and he would accept "a reasonable settlement offer."

Shortly after, on June 30, 2023, Capurso issued a demand to Allied for $1,949,357.83. Allied responded one week later, on July 7, 2023, stating it was "investigating this claim while reserving all rights under the Policy" and further noting that given the "disparity between the estimate for covered damage obtained by Allied . . . and the damage claimed to be in dispute by" Capurso, "a dispute as to the amount of the loss appears to exist." Allied invoked and demanded appraisal under the Policy and it requested that Capurso and his adjuster appear for an examination under oath ("EUO") on July 26, 2023. Capurso's counsel responded via email on July 13, 2023, stating, "We're not doing any of this." Neither Capurso nor his attorney appeared for the scheduled examination on July 26, 2023.

On August 18, 2023, Allied again demanded appraisal under the Policy and an EUO of Capurso and his adjuster to be held on September 14, 2023, "expressly reserv[ing] all rights under the Policy." Neither Capurso nor his adjuster appeared on September 14, 2023.[4]

---

[4] Allied obtained certificates of non-appearance for both the July 26, 2023 and September 14, 2023 scheduled examinations.

4

On September 19, 2023, responding to Capurso's June 30, 2023 pre-suit demand, which Allied states it did not receive until August 29, 2023, Allied requested multiple documents from Capurso pursuant to the Policy, including photos and evidence of the claimed damage. Allied reserved all rights under the Policy, noting that nothing in its letter should "be construed as a waiver of any Policy provision . . . including appraisal and submission to Examination Under Oath."

On February 2, 2024, in an email correspondence between the parties, Capurso argued that because "appraisal specifically d[id] not address coverage, and . . . [his] claim was denied for lack of coverage in 2022[,]" the Policy's "appraisal clause . . . d[id] not apply." Capurso noted that the Policy provided Allied "would specify what information was required within 15 days" of his claim and he argued that as a result, Allied's request for an EUO and invocation of appraisal a year later was "not reasonable under th[e] [P]olicy." (Emphasis removed). In response, Allied reiterated that "the [P]olicy clearly provide[d] for [its] right to examine [Capurso] under oath and to have the amount of loss determined by the appraisal process." Allied redesignated an appraiser and offered various dates for Capurso to appear for an EUO. Allied requested that Capurso respond with a proposed EUO date and appraiser designation within twenty days. Capurso filed suit instead.

Capurso filed suit on March 22, 2024.[5] Together with its answer, Allied filed a Motion to Compel Examination Under Oath and Appraisal ("Motion") requesting that the trial court compel appraisal and compel the EUO of Capurso and his adjuster. Allied argued that under the Policy, it was contractually entitled to an appraisal and the requested EUOs.

Capurso responded arguing that Allied's Motion should be denied because the lawsuit involved coverage disputes which appraisal cannot resolve. He argued that appraisal was not a condition precedent to suit because appraisal clauses are a means of determining and resolving disputes concerning the amount of loss for a covered claim and here, where coverage was denied, appraisal had no application. Capurso also argued that Allied was not entitled to the requested EUOs because it had "waived its right to take the examination under oath of [Capurso] and [his] adjuster once [Allied] made [its] claim determination[,]" and as the "matter is now in litigation, [Allied] can go through the deposition process and take the sworn testimony of [Capurso] and [his] adjuster."

The trial court denied Allied's Motion. Allied filed a Motion for Reconsideration arguing that the Policy required appraisal. Allied explained that it had not waived its appraisal right and that appraisal could move forward regardless

---

[5] Although Capurso asserts that he filed suit on April 25, 2024, the record reflects he filed his original petition against Allied on March 22, 2024.

of any coverage dispute. Allied also argued that the trial court's ruling "would deprive [it] of critical defenses at trial, and of its right to have amount of loss determined in the agreed-upon method of appraisal." Allied argued that Capurso's submission to an EUO and completion of an appraisal were conditions precedents to filing suit.

Capurso filed a response to Allied's Motion for Reconsideration, again arguing that Allied's denial of coverage was something "appraisal cannot and will not resolve." Capurso challenged Allied's argument that appraisal can proceed regardless of coverage, stating it "[wa]s in direct contradiction to binding Texas case law," and in any event, appraisal would be futile as Allied had "three . . . opportunities to open coverage[,]" but chose not to. Capurso argued that Allied's EUO request was "a means to harass" him and his adjuster as Allied had already denied coverage and had not demonstrated why its goal "cannot be achieved by deposing the[m] . . . without getting two bites at the apple." Capurso reiterated that his June 19, 2023 pre-suit notice complied with statutory requirements as it "reasonably apprised [Allied] of all of [his] specific complaints" and gave Allied "ample time to consider all of the allegations."

In its reply, Allied argued, among other things, that "appraisal can – and should – be structured in such a way as to determine the amount of loss separately and independently from coverage." (Emphasis removed).

The trial court held a hearing on Allied's Motion for Reconsideration, during which Allied argued it was entitled to reconsideration of the trial court's denial "because appraisal [wa]s the contractually agreed upon and indeed required method of loss resolution." Allied further argued that contrary to Capurso's argument, it had not waived its right to an EUO because Capurso's demand for $1.9 million dollars in June 2023, containing more than $600,000 in property damage, constituted "brand new information."

The trial court denied Allied's Motion for Reconsideration. This mandamus proceeding followed.

**Standard of Review**

Mandamus is an extraordinary remedy that is available only in limited circumstances. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). To secure mandamus relief, a relator must establish that (1) the trial court committed a clear abuse of discretion or violated a duty imposed by law, and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (internal quotation marks and citations omitted).

8

Mandamus will not issue when there is a clear and adequate remedy at law. *Walker*, 827 S.W.2d at 840 (quotation marks and citation omitted).  We review the adequacy of an appellate remedy by balancing the benefits of mandamus review against its detriments.  *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).  We consider whether mandamus will "preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare [the litigants] and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings."  *In re Prudential Ins.*, 148 S.W.3d at 136.  An appellate remedy is not inadequate merely because it may result in more expense or delay than obtaining a writ.  *Walker*, 827 S.W.2d at 842.

## Motion to Compel Appraisal

Appraisal clauses, commonly found in homeowners' insurance policies, "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011) (orig. proceeding).  "Appraisals can provide a less expensive, more efficient alternative to litigation," and they "should generally go forward without preemptive intervention by the courts."  *Id.*  (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009)).  Trial courts have no discretion to ignore a valid appraisal

clause. *Johnson*, 290 S.W.3d at 888 (holding that "appraisals should generally go forward without preemptive intervention by the courts"); *see also In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010) (orig. proceeding) ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the appraisal provision."). Absent illegality or waiver, appraisal clauses are generally enforceable. *In re Universal Underwriters of Tex.*, 345 S.W.3d at 407.

A trial court's abuse of discretion in failing to enforce an appraisal clause cannot be remedied by appeal. *See id.* at 412-13; *see also In re State Farm Lloyds*, 514 S.W.3d 789, 795 (Tex. App.—Houston [14th Dist.] 2017) (orig. proceeding) (holding that trial court abused discretion by refusing to enforce valid appraisal clause and appellate remedy not adequate to correct error); *In re Liberty Ins. Corp.*, 496 S.W.3d 229, 235 (Tex. App.—Houston [1st Dist.] 2016) (orig. proceeding) (same).

## A.   Abuse of Discretion

Allied argues the trial court abused its discretion by denying its Motion to Compel Appraisal because it has a contractual right to appraisal, and it never waived its right. Capurso responds that Allied is not entitled to an appraisal because this matter concerns a coverage dispute which appraisals cannot resolve. Capurso further

10

argues that Allied waived its appraisal rights because it delayed its demand for appraisal. We reject both arguments.

### 1. Allied has a contractual right to appraisal

Among other provisions, Section 1 of the Policy contains an appraisal clause that states:

> F. Appraisal
>
> If you [Capurso] and we [Allied] fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:
>
> 1. Pay its own appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally.

The "Suit Against Us" provision in the Policy further provides that "[n]o action can be brought against [Allied] unless there has been full compliance with all of the terms under Section I of this [P]olicy . . . ."

Allied thus has a contractual right to appraisal. And contrary to Capurso's argument, Allied's handling of Capurso's insurance claim did not render the clause inapplicable or waive Allied's right to an appraisal.

11

## 2. *Allied's claim response did not render the appraisal clause inapplicable*

The facts giving rise to this mandamus proceeding are undisputed. When Allied first inspected Capurso's property, it acknowledged that the Policy covered part of the loss, but it denied Capurso's claim because the amount of the covered loss fell below the Policy's deductible. Although Allied also denied some of the claimed damage based on coverage, its denial did not preclude an appraisal from moving forward. *Johnson*, 290 S.W.3d at 893 ("Even if the appraisal here turns out to involve not just damage but liability questions, that does not mean appraisal should be prohibited as an initial matter."); *In re Liberty Ins.*, 496 S.W.3d at 234-35 (holding that insurer's denial of insurance claim did not amount to waiver of insurer's right to appraisal).

The facts here are similar to those in *State Farm Lloyds v. Johnson*, where the insured filed a claim under her homeowners' insurance policy for damage to her roof following a hailstorm. 290 S.W.3d at 887. The adjuster determined that while there was some covered damage, the repair costs were lower than the policy's deductible. *Id*. By contrast, the insured's contractor determined that the entire roof had to be replaced, and the insured requested an appraisal under the policy. *Id.* State Farm refused to participate in the appraisal process arguing, like Capurso does here, that because the parties' "dispute concerned causation and not 'amount of loss,'" appraisal was not applicable. *Id.* at 888. The insured filed a declaratory judgment

12

seeking to compel appraisal. *Id.* The trial court granted summary judgment in favor of State Farm holding "no appraisal was warranted[,]" but "[t]he court of appeals reversed, holding that appraisal was required." *Id.* The Texas Supreme Court affirmed, holding State Farm could not avoid appraisal "merely because there might be a causation question that exceeds the scope of appraisal." *Id.* at 893 (noting "appraisal can be structured in a way that decides the amount of loss without deciding liability questions"). As the *Johnson* court explained,

> . . . when an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id.* at 894. *Johnson* thus clarified that appraisal is not precluded merely because there are disputes involving coverage.

We recently reached the same conclusion in *In re SureChoice Underwriters Reciprocal Exchange*, 702 S.W.3d 876 (Tex. App.—Houston [1st Dist.] 2024, no pet.).[6] The Policy here and the one in *SureChoice* contain the same appraisal clause. We held in *SureChoice* that even though the policy expressly provided that appraisal applied when the parties "fail[ed] to agree on the amount of loss" and there were

---

[6] Our opinion in *In re SureChoice* issued one week after the trial court denied Allied's Motion for Reconsideration.

13

issues involving coverage, appraisal was not precluded as an initial matter. *Id.* at 884. We concluded that "appraisal may move forward so that the 'appraiser[] can assess the amount of damage' leaving 'causation up to the courts.'" *Id.* (quoting *Johnson*, 290 S.W.3d at 894). "And if 'divisible losses are involved,' the 'appraiser [] can decide the cost to repair each without deciding who must pay for it.'" *Id.* (quoting *Johnson*, 290 S.W.3d at 894) ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong."); *see also In re Liberty Ins.*, 496 S.W.3d at 235 (holding that insurer had not waived appraisal even though it denied insurance claim and case involved issues of causation).

As we did in *SureChoice*, we conclude here that Allied's denial of Capurso's claim did not render the appraisal clause inapplicable. Capurso argues that because Allied denied his claim and an impasse was reached, Allied waived its appraisal rights. Taking into consideration all relevant factors, we cannot conclude Allied waived its right to an appraisal.

An insurer's denial of a claim is not dispositive on the issue of waiver. In *In re Liberty Insurance*, we explained that "[w]hether an insurer denied a homeowner's claim for damages under the governing policy is relevant to the question of waiver of the appraisal clause, but it is not determinative of that question." 496 S.W.3d at 235 (holding that "denial of a homeowner's claim for damages does not, by itself,

constitute an 'intentional relinquishment of a known right' or conduct 'inconsistent with claiming' the right of appraisal") (quoting *In re Universal Underwriters of Tex.*, 345 S.W.3d at 407); *see also In re State Farm Lloyds*, 514 S.W.3d at 794 (same). Rather, to determine whether an insurer "waived its right to invoke an appraisal clause, we must also consider the language of the [p]olicy, as well as whether the insurer expressed its intent to reserve its appraisal rights." *In re Liberty Ins.*, 496 S.W.3d at 235.

Based on the policy and the insurer's actions in *Liberty Insurance*, we held the insurer had not waived its appraisal rights by issuing a letter to the insured denying his claim.[7] *Id.* The insurer's letter stated:

> We have recently reviewed your homeowner's claim and have determined that no storm related damages were found. Your policy affords coverage when physical damage occurs to your covered property resulting from a covered event. As no storm related damages were found, we are closing our file. We regret that we are unable to assist you further in this matter.

*Id.* at 233. We held that notwithstanding the insurer's denial, the insurer had reserved its right to invoke appraisal because the policy required waiver to be in writing and the record did not include any such writing, and the insurer had expressly

---

[7] In *In re Liberty Insurance*, the insured submitted an insurance claim for damage to his property following a storm. 496 S.W.3d 299, 233 (Tex. App.—Houston [1st Dist.] 2016) (orig. proceeding). The insurer denied his claim, concluding "no storm related damages" had been found. *Id.* The insured sent a demand letter to the insurer and filed suit. *Id.* at 231, 233. After the parties attempted mediation, the insurer invoked the appraisal clause of the policy. *Id.* at 233.

reserved its right to invoke appraisal in letters to the insured and in filed court pleadings. *Id.* at 235. Even though the appraisal clause stated that it applied when the parties "fail[ed] to agree on the amount of loss" and the case "involve[d] a dispute over causation," we held appraisal was still appropriate because the insurer had not waived appraisal and when "an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong." *Id.* at 230, 234–35 (citing *Johnson*, 290 S.W.3d at 894); *see also In re State Farm Lloyds*, 514 S.W.3d at 794 (holding that insurer did not waive appraisal by denying coverage for most of damage where remaining covered damage fell below policy's deductible).

We similarly conclude here that Allied's response to Capurso's claim did not result in waiver of Allied's appraisal rights.

### 3. *Allied did not waive its appraisal rights by not invoking appraisal earlier*

Capurso suggests that Allied "impliedly" waived appraisal by not invoking appraisal until after it made its final determination denying coverage. Waiver requires intent, "either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re Universal Underwriters of Tex.*, 345 S.W.3d at 407 (quoting *In re Gen. Elec. Capital Corp.,* 203 S.W.3d 314, 316 (Tex. 2006)). In the context of appraisal, to "constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or

16

would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss." *In re Liberty Ins.*, 496 S.W.3d at 232 (quoting *In re Universal Underwriters of Tex.*, 345 S.W.3d at 407). Ordinarily, waiver is a question of fact, but when the facts are admitted or clearly established, waiver is a question of law. *Id.* at 233. The party challenging the right to appraisal bears the burden of establishing waiver. *In re State Farm Lloyds*, 514 S.W.3d at 792.

Nothing in the Policy here provides a deadline by when appraisal must be invoked. Capurso also has not demonstrated that the timing of Allied's demand for appraisal was unreasonable. Although Allied originally received Capurso's claim in June 2022, the record reflects that the parties continued to communicate about the claim well into January 24, 2023, when Allied requested documentation concerning repairs made to the tile roof as referenced in Capurso's prior correspondence. According to Allied, it received no documentation in response to its request until June 2023, when it received Capurso's written demand for $1.9 million.

Allied invoked its appraisal rights one week after receiving Capurso's demand for $1.9 million in June 2023. And it did so again a second time in August 2023, well before Capurso filed suit seven months later. That is not an unreasonable delay or conduct inconsistent with Allied's appraisal rights. *See In re Liberty Ins.*, 496 S.W.3d at 235 (granting mandamus relief where insurer invoked appraisal after suit filed and after parties participated in mediation, and concluding there was no

17

evidence that insurer waived appraisal in writing); *In re SureChoice*, 702 S.W.3d at 878 (rejecting argument relator waived right to appraisal by not invoking appraisal until after suit was filed).

Even if Allied had unreasonably delayed, "mere delay is not enough to find waiver; a party must show that it has been prejudiced." *In re Universal Underwriters of Tex.*, 345 S.W.3d at 411. Capurso does not argue he was prejudiced by Allied's purported delay in invoking appraisal. Capurso argues only that appraisal would be futile because this is a case involving a coverage dispute—an argument we have already addressed and rejected. *See In re SureChoice*, 702 S.W.3d at 886 (rejecting real party's argument that appraisal would be a waste of time); *see also Johnson*, 290 S.W.3d at 894 ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong.").

We further note that the Policy includes a "Waiver or Change of Policy" provision, stating that "[a] waiver or change of a provision of this [P]olicy must be in writing by us [Allied] to be valid. Our request for an appraisal or examination will not waive any of our rights." There is nothing in the record reflecting Allied waived its appraisal rights in writing.

In short, the evidence does not reflect that Allied intentionally relinquished its appraisal rights or engaged in intentional conduct inconsistent with claiming its rights. *See In re Universal Underwriters of Tex.*, 345 S.W.3d at 407 (holding that

18

waiver requires intent shown by "either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right") (quoting citation omitted).

The trial court thus abused its discretion in denying Allied's Motion to Compel Appraisal.[8]

## B.    Adequate Appellate Remedy

Refusal to enforce an appraisal clause is an abuse of discretion that cannot be remedied by appeal. *In re Universal Underwriters of Tex.*, 345 S.W.3d at 412 ("[M]andamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim.") (citation omitted); *see also In re Liberty Ins.*, 496 S.W.3d at 235 ("We conclude that the trial court abused its discretion by denying [the insurer's] motion to compel appraisal and that [the insurer] has no adequate appellate remedy to correct this error.").

---

[8]    Capurso's allegation that "Allied further waived appraisal rights by designating an appraiser it unequivocally knew was prejudicial" is an argument Capurso did not raise below. We therefore cannot consider it. *In re Texas Dep't of Fam. & Protective Servs.*, 660 S.W.3d 248, 255 (Tex. App.—San Antonio 2022) (orig. proceeding) ("The trial court could not have abused its discretion by declining to follow an argument that was never presented to it."); *see also* TEX. R. APP. P. 33.1(a)(1).

We thus hold that Allied lacks an adequate appellate remedy and mandamus relief is appropriate on the issue of appraisal.

## Motion to Compel Examination Under Oath

Allied also argues that the trial court abused its discretion by denying its Motion to Compel Examination Under Oath for Capurso and his adjuster because it had a contractual right to such examinations, and it never waived its right.

**A.     Abuse of Discretion**

Section I of the Policy contains a "Duties After Loss" provision that provides:

> In a case of a loss to covered property, we have no duty to provide coverage under this [P]olicy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an 'insured' seeking coverage, or a representative of either:
> . . .
>
> 5.      Cooperate with us in the investigation of a claim;
> . . .
>
> 7.      As often as we reasonably require:
> . . .
>
>     c.  submit to examinations under oath . . . .

The "Suit Against Us" provision in the Policy provides that "[n]o action can be brought against [Allied] unless there has been compliance with all of the terms under Section I of this [P]olicy . . . ."

Capurso contends that under the Policy, Allied was not entitled to take the requested EUOs "as a matter of law" because it failed to request the EUOs "during

20

the claim investigation period." Relying on the terms of the Policy, Capurso argues that Allied had fifteen days from receipt of his claim to request the EUO. The Policy provision on which Capurso relies provides that "[n]o later than 15 days after we receive your written notice of claim, we must . . . [b]egin an investigation of the claim" and "[s]pecify the information you must provide." The Policy further provides that once Allied receives the requested information, Allied "must notify" Capurso "in writing whether the claim will be paid or has been denied or whether more information is needed "[w]ithin 15 'business days.'" Relying on this language, Capurso claims that because Allied did not request additional information within fifteen days of receiving his claim, it was precluded under the terms of the Policy from later requesting the EUOs.

Allied responds that because Capurso's new demand in June 2023 "triggered a need for more information," it had a right to investigate and a right to request the EUOs. Allied further argues that under the terms of the Policy, it was not limited to requesting the EUOs within fifteen days of receiving Capurso's claim. We agree.

In *In re Foremost County Mutual Insurance Company*, on which Allied relies, the appellate court granted mandamus relief holding the trial court had abused its discretion by denying the insurer's motion to abate due to the insured's failure to submit to an EUO. 172 S.W.3d 128, 136 (Tex. App.—Beaumont 2005) (orig. proceeding). The insured in *Foremost* argued that the insurer had waived its right

21

to request the EUO because its request was untimely. *Id*. at 132. Like Capurso does here, the insured in *Foremost* argued that the insurer "was required to tell him it wanted an EUO within fifteen days after [] receiv[ing] notice of his claim." *Id.* The court rejected the insured's argument holding that because the policy also provided that the insurer could request more information if during the investigation of the claim such information was necessary, the fifteen-day limitation did not preclude its request for an EUO. *Id.* at 134. The court held that "[e]nforcing EUO clauses allows [an] [insurance] company to conduct a more thorough investigation before it must make a determination on accepting or rejecting a claim." *Id*. at 136.

As in *Foremost*, the Policy here states that Capurso must "submit to examinations under oath . . . ." and further that "[n]o action can be brought against [Allied] unless there has been compliance with all of the terms of this [P]olicy." Also, like in *Foremost*, the Policy provision on which Capurso relies states that Allied "may request more information if during the investigation of the claim such additional information is necessary." Allied therefore was not limited to requesting the EUOs within fifteen days of receiving Capurso's initial claim. *Id*. at 134 (holding that "as a matter of law" insurer "did not waive its contractual right to take [insured's] EUO" despite requesting it more than fifteen days after receiving insured's notice of loss).

As we have noted, the record reflects that although Allied first received Capurso's claim in June 2022, the parties continued to communicate about the claim well into January 24, 2023, when Allied requested documentation concerning repairs made to the tile roof as referenced in Capurso's prior correspondence. According to Allied, it received no documentation in response to its request. Rather, on June 30, 2023, Capurso sent Allied a written demand for $1.9 million. Seven days later, on July 7, 2023, in response to Capurso's demand, Allied confirmed that "it was in the process of investigating the facts and circumstances of the losses" and requested the EUO of Capurso and his adjuster. Allied requested the EUOs again in August 2023, well before Capurso filed suit seven months later.

Capurso relies on *In re Cypress Texas Lloyds*, where the appellate court, distinguishing *Foremost*, denied mandamus relief because the insurer requested the EUO after "the claim had been investigated and paid, and the request for [the EUO] was made after litigation had been filed." No. 13-11-00107-CV, 2011 WL 3631970, at *11 (Tex. App.—Corpus Christi Aug. 15, 2011, original proceeding). *Cypress* is distinguishable. Unlike the insurer in *Cypress*, Allied requested the EUOs seven months before Capurso filed suit and it did so in response to Capurso's demand in June 2023.

We thus hold the trial court abused its discretion in denying Allied's Motion to Compel the EUO of Capurso and his adjuster.

**B.    Adequate Appellate Remedy**

Courts have held that mandamus relief is appropriate for denial of examinations under oath because the trial court's error cannot be adequately remedied through the normal appellate process. *See In re Foremost*, 172 S.W.3d at 136 (granting mandamus relief from denial of EUO and explaining that a mandamus remedy is "important to preserve [an] insurer's contractual right to obtain an EUO prior to suit, a right long recognized in Texas"). We thus hold that Allied lacks an adequate appellate remedy and mandamus relief is appropriate on this issue.

## Abatement

When the trial court denied Allied's Motion to Compel Examination Under Oath and Appraisal, it also denied its corresponding Motion for Abatement pending appraisal and EUOs. Because the trial court denied Allied's Motion to Compel, there was no need to consider the necessity of abatement during appraisal or EUOs. In its mandamus petition, Allied does not separately challenge the trial court's denial of its Motion for Abatement. Given our conditional grant of mandamus relief to compel appraisal and EUOs, Allied may re-urge in the trial court its request for abatement pending the EUOs and appraisal process.

## Conclusion

We conditionally grant mandamus relief as to Allied's request to compel appraisal and the EUOs of Capurso and his adjuster. We direct the trial court to

(1) vacate its August 20, 2024 order denying Allied's Motion; and (2) order the parties to engage in the appraisal process, and for Capurso and his adjuster to submit to EUOs.  The writ will issue only if the trial court fails to do so.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.