**Opinion issued June 9, 2016**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-15-00956-CV

———————————

### IN RE LIBERTY INSURANCE CORPORATION, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### O P I N I O N

In this insurance coverage dispute, relator, Liberty Insurance Corporation ("Liberty"), filed this petition for writ of mandamus seeking to vacate the trial court's order denying Liberty's motion to compel appraisal.[1] In one issue, Liberty contends that the trial court erred in refusing to compel appraisal of the subject

---

[1] The Honorable Erin Lunceford, Judge of the 61st District Court of Harris County, Texas, Respondent. The underlying lawsuit is *James Hallbeck v. Liberty Mutual Insurance Company*, No. 2014-71521 (61st Dist. Ct., Harris Cnty., Tex.).

property, arguing that real party in interest James Hallbeck had a contractual duty to submit to appraisal and that Liberty has not waived its appraisal rights.

We conditionally grant the petition for writ of mandamus.

## Background

Liberty issued an insurance policy, effective March 5, 2013, to Hallbeck that provided coverage for his home located in Cypress ("the Policy"). Among other provisions, the Policy included the following appraisal clause:

> **E.    Appraisal**
> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
> Each party will:
> **1.**    Pay its own appraiser; and
> **2.**    Bear the other expenses of the appraisal and umpire equally.

The Policy also included a provision stating, "A waiver or change of a provision of this policy must be in writing by us to be valid."

On June 6, 2013, a storm hit the Cypress area. Hallbeck filed a claim with Liberty in August 2014, asserting that the storm caused wind and hail damage to his house. Later that same month, a Liberty adjuster inspected Hallbeck's property

2

and determined that no storm-related damages had occurred. On August 26, 2014, Liberty sent notice to Hallbeck informing him that it had found no storm-related damages and that it was denying his claim. This letter included the following statement: "This letter should not be construed as a waiver or estoppel of any of the terms, conditions or defenses afforded by the policy or applicable law."

Hallbeck filed the underlying proceeding against Liberty in December 2014, asserting causes of action for breach of contract, violations of the Insurance Code, and violations of the Deceptive Trade Practices Act. In a demand letter, Hallbeck specified that he sought $62,325.88 in actual damages, $3,900 in expenses, and $30,000 in attorney's fees.

Liberty answered and asserted a general and specific denial, as well as several affirmative defenses. Liberty also expressly reserved its appraisal rights, stating: "By appearing and answering herein, Defendant does not waive, and expressly reserves[,] its right under the policy to demand an appraisal for determination of the actual cash value and the amount of loss with respect to the property damage claims of the Plaintiff asserted in this lawsuit." Liberty also responded to Hallbeck's demand letter and stated, "Nothing herein should be considered a waiver of Defendant's right to [invoke] appraisal in this matter."

After an unsuccessful attempt to mediate this dispute, Liberty sent Hallbeck a letter on April 2, 2015, invoking the appraisal clause in the Policy. This letter

3

informed Hallbeck of the person Liberty had chosen as its appraiser and requested that he appoint his own appraiser within twenty days.

When Hallbeck did not appoint his own appraiser, Liberty moved the trial court to abate the proceedings and compel appraisal. Liberty argued that the appraisal clause in the Policy required the parties, upon written demand, to submit to the appraisal process when the parties fail to agree on the "amount of loss." Liberty contended that the appraisal clause was satisfied in this case because Hallbeck made a claim under the Policy that the damage to his house was caused by a covered event but Liberty disagreed and determined that the storm did not cause the damage to Hallbeck's house. Liberty argued that Texas courts routinely enforce appraisal clauses and require insureds to participate in the appraisal process when invoked by the insurer, and it argued that the Texas Supreme Court has held that appraisal clauses should be enforced even when the insurer has already denied the claim and a dispute over coverage exists because the insurer could be wrong about coverage. Liberty argued that it did not waive its right to enforce the appraisal clause when it denied Hallbeck's claim.

Hallbeck responded to Liberty's motion to compel appraisal and argued that Liberty waived its right to enforce the appraisal clause when it denied his claim. Hallbeck argued that the parties did not disagree over the "amount of loss" because Liberty denied that a "loss" under the Policy occurred at all.

The trial court denied Liberty's motion to compel appraisal. The trial court did not specify the reasons for its decision in the order. This mandamus proceeding followed.

**Mandamus Standard of Review**

Generally, to be entitled to mandamus relief, the relator must demonstrate that the trial court abused its discretion and that it has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker*, 827 S.W.2d at 839. With respect to the resolution of factual issues, the reviewing court may not substitute its judgment for that of the trial court, and the relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 839–40. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding). Texas courts have held that the refusal to enforce the appraisal process may "prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim," and thus an

appellate remedy for denying a demand for appraisal is not adequate. *Id.* at 196; *see also State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009) (stating that trial courts "have no discretion to ignore a valid appraisal clause entirely").

## Entitlement to Appraisal

Appraisal clauses are commonly found in homeowners' insurance policies and "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011) (orig. proceeding); *Johnson*, 290 S.W.3d at 888–89 ("Virtually every property insurance policy for both homeowners and corporations contains a provision specifying 'appraisal' as a means of resolving disputes about the 'amount of loss' for a covered claim."); *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."). Absent illegality or waiver, these clauses are generally enforceable. *In re Universal Underwriters*, 345 S.W.3d at 407; *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the

appraisal provision."). "Appraisals can provide a less expensive, more efficient alternative to litigation, and . . . they 'should generally go forward without preemptive intervention by the courts.'" *In re Universal Underwriters*, 345 S.W.3d at 407 (quoting *Johnson*, 290 S.W.3d at 895).

Although the Texas Supreme Court has rarely addressed the issue of waiver of an appraisal clause, it has held:

> [To] constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss.

*Id.* (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 632 (Tex. 1888)). Waiver requires intent: either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Id.* (quoting *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)). Waiver is ordinarily a question of fact, but when the facts are admitted or clearly established, it becomes a question of law. *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 561.

Here, the facts are undisputed. Hallbeck submitted a claim for property damage to Liberty. After an adjuster inspected the property, Liberty sent Hallbeck a letter in which it stated,

> We have recently reviewed your homeowner's claim and have determined that no storm related damages were found. Your policy

7

> affords coverage when physical damage occurs to your covered property resulting from a covered event. As no storm related damages were found, we are closing our file. We regret that we are unable to assist you further in this matter.

This letter also included a statement that the letter "should not be construed as a waiver or estoppel of any of the terms, conditions or defenses afforded by the policy or applicable law." Hallbeck sent a demand letter to Liberty and filed suit against Liberty for breach of contract and DTPA violations. Liberty reserved its right to invoke the appraisal process in both its original answer and in its response to Hallbeck's demand letter. After the parties attempted mediation, Liberty invoked the appraisal clause of the Policy. Hallbeck did not select an appraiser or participate in this process, and Liberty moved the trial court to compel an appraisal.

Liberty cites the Texas Supreme Court's decision in *Johnson* for the proposition that its denial of Hallbeck's claim did not amount to waiver of its appraisal rights under the Policy. In that case, after Johnson filed a claim under her homeowners' insurance policy, an adjuster for her insurance company, State Farm, determined that covered damage occurred, but that the repair costs were lower than the policy's nearly-$1,500 deductible. *Johnson,* 290 S.W.3d at 887. Johnson's roofing contractor, on the other hand, determined that the entire roof needed to be replaced and that the replacement cost would be in excess of $13,000. *Id.* Johnson requested an appraisal under the terms of her policy. *Id.* State Farm refused to

8

participate, "asserting that the parties' dispute concerned causation and not 'amount of loss.'" *Id.* at 888. Johnson filed a declaratory judgment seeking to compel appraisal. *Id.* The trial court granted summary judgment in favor of State Farm, ruling that no appraisal was warranted. *Id.* The Texas Supreme Court granted review "to decide whether the dispute here fell within the scope of this appraisal clause." *Id.*

The supreme court noted that appraisers "must always consider causation, at least as an initial matter" and that "[a]ny appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else," such as normal wear and tear or a non-covered peril. *Id.* at 893. Thus, the court held that State Farm could not "avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal." *Id.* The court also noted that appraisals are intended to take place before suit is filed and that "in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions." *Id.* at 894. The court stated:

> As already noted, when an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. *When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong.* And

9

> when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id.* (emphasis added). The court concluded, "But unless the 'amount of loss' will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

Hallbeck cites the Amarillo Court of Appeals' decision in *In re Acadia Insurance Co.* for the proposition that "[i]t is clear that denying coverage under an insurance policy does, in fact, waive the right of the insurer to request an appraisal." 279 S.W.3d 777, 780 (Tex. App.—Amarillo 2007, orig. proceeding). However, as Liberty points out, the Amarillo Court decided *In re Acadia Insurance Co.* before the Texas Supreme Court issued *Johnson*, which recognized that appraisals may be helpful even after the insurer has denied the claim. *See* 290 S.W.3d at 894 ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding '$0' if that is how much damage they find.").

The Texas Supreme Court has emphasized that "'[w]aiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *In re Universal Underwriters*, 345 S.W.3d

at 407 (quoting *In re Gen. Elec. Capital Corp.*, 203 S.W.3d at 316). Here, this case involves a dispute over causation, with Hallbeck claiming that the June 2013 storm damaged his property and Liberty expressing its belief that Hallbeck did not suffer any storm-related damages. Although Liberty denied Hallbeck's claim, Liberty also reserved its appraisal rights in multiple letters to Hallbeck and in filings with the trial court. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 562 ("In addition, shortly after the claim was filed in 2008, Slavonic sent the [homeowners] written notice that it did not waive its rights in a reservation of rights letter quoted above. This action clearly demonstrated Slavonic's intent *not* to waive its right to appraisal."). In the letter denying Hallbeck's claim for damages, Liberty stated, "This letter should not be construed as a waiver or estoppel of any of the terms, conditions or defenses afforded by the policy or applicable law." Similarly, in its response to Hallbeck's demand letter, Liberty stated, "Nothing herein should be considered a waiver of Defendant's right to [invoke] appraisal in this matter." Liberty also expressly reserved its right to invoke the appraisal process in its original answer: "By appearing and answering herein, Defendant does not waive, and expressly reserves[,] its right under the policy to demand an appraisal for determination of the actual cash value and the amount of loss with respect to the property damage claims of the Plaintiff asserted

11

in this lawsuit." Liberty then participated in an unsuccessful mediation before invoking its right to appraisal.[2]

Whether an insurer denied a homeowner's claim for damages under the governing policy is relevant to the question of waiver of the appraisal clause, but it is not determinative of that question. *See Johnson*, 290 S.W.3d at 894 ("When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong."). We conclude that denial of a homeowner's claim for damages does not, by itself, constitute an "intentional relinquishment of a known right" or conduct "inconsistent with claiming" the right of appraisal. *See In re Universal Underwriters*, 345 S.W.3d at 407. Instead, in determining whether an insurer waived its right to invoke an appraisal clause, we must also consider the language of the Policy, as well as whether the insurer expressed its intent to reserve its appraisal rights. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 561–62; *cf. In re Acadia Ins. Co.*, 279 S.W.3d at 780 (denying insurer's mandamus petition when evidence in record included letter from insurer's counsel to insured indicating that insurer did not believe claims was covered and indicating "that Acadia cannot be required to submit the claim for an appraisal if there is no

---

[2]    Furthermore, the Policy contained a clause providing that "[a] waiver or change of a provision of this policy must be in writing by us to be valid." Hallbeck has presented no evidence that Liberty waived its right to appraisal in writing. "The Texas Supreme Court has given weight to such an anti-waiver clause in insurance cases." *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 561 (Tex. App.— Houston [14th Dist.] 2010, orig. proceeding).

coverage" and holding that trial court "had before it evidence that Acadia intentionally and unequivocally relinquished the right [to require appraisal] so that it could challenge coverage and, thus, waived that right"). Although Liberty denied that Hallbeck suffered storm-related damages and denied his claim, the Policy provides that clauses may only be waived in writing, the record does not contain evidence that Liberty waived its right to appraisal in writing, and the record does include evidence that Liberty expressly reserved its right to invoke the appraisal process.

We conclude that the trial court abused its discretion by denying Liberty's motion to compel appraisal and that Liberty has no adequate appellate remedy to correct this error. *See In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d at 196 (holding that "[a] refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claims" and that trial court's error "denies the development of proof going to the heart of a party's case and cannot be remedied by appeal").

We sustain Liberty's sole issue.

**Conclusion**

We conditionally grant Liberty's petition for writ of mandamus. We order the trial court to vacate its October 16, 2015 order denying Liberty's motion to compel appraisal. The writ will only issue if the trial court fails to do so.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Brown, and Huddle.