**Opinion issued November 20, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-25-00580-CV

_____

## IN RE AMERICAN ZURICH INSURANCE COMPANY, Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

### MEMORANDUM OPINION

Real Parties in Interest Jay Steinfeld and Barbara Winthrop sued Relator American Zurich Insurance Company following a dispute concerning the scope of repairs for fire-related damage to Real Parties' newly-built home. Zurich filed a motion to compel appraisal, which Steinfeld and Winthrop opposed. After the trial court denied Zurich's motion to compel appraisal, Zurich filed a petition for writ of mandamus challenging the trial court's denial.

We conditionally grant mandamus relief.[1]

## Background

Steinfeld and Winthrop (collectively, Steinfeld) hired The Southhampton Group to build an 8,009 square foot home in West University Place, a small city inside Houston. Construction began in 2021. The Southhampton Group obtained a Zurich builder's risk insurance policy, which named Steinfeld as an additional insured. A few days prior to move-in, Steinfeld alleges that Sheet Metal Crafts, a subcontractor working on the home's roof, caused a fire that substantially damaged the home.

The Southhampton Group notified Zurich of the claim on July 25, 2023. Zurich began an investigation, hired an industrial hygienist and building consultant, and inspected the home in 2023 and 2024. Steinfeld also hired consultants to determine the amount of damage. Around February 2024, Zurich issued a $500,000 advance payment to Steinfeld to begin remediation and necessary repairs. Throughout 2023 and 2024, the parties continued to inspect and investigate the damage to the home and continued to negotiate the loss amount.

---

[1] The underlying case is *Jay Steinfeld and Barbara Winthrop v. American Zurich Insurance Company and Sheet Metal Crafts, LLC*, cause number 2024-74640, pending in the 295th District Court of Harris County, Texas, the Honorable Donna Roth presiding.

On March 1, 2024, Steinfeld notified Zurich that it had retained counsel. On May 15, 2024, Steinfeld acknowledged that Zurich's building consultant had estimated $1,480,394.80 in reconstruction costs. And, in May 2024, Steinfeld provided Zurich with a reconstruction estimate of $4.8 million. Zurich then reinspected the home in July 2024. On August 19, 2024, Steinfeld sent a notice and demand letter, seeking $4.5 million from Zurich for early settlement and asked for mediation within 90 days. On September 25, 2024, Zurich informed Steinfeld that it had agreed to replace interior stone walls but that windows would need to be reinspected.

After Steinfeld received what they contend was an inadequate response to its demand letter, Steinfeld sued Zurich in October 2024, alleging claims for violations of the Texas Insurance Code, prompt payment of claims, statutory interest penalties, breach of the insurance policy, breach of the duty of good faith and fair dealing, punitive damages for bad faith, and violations of the Texas Deceptive Trade Practices Act. Steinfeld also made a claim against Sheet Metal Crafts for negligence.

Zurich answered, generally denying the allegations and raising various defenses. Zurich's answer included a reservation of "all rights and defenses that it may have or that may arise under the Policy." In a November 7, 2024 email to Steinfeld, Zurich stated that the net undisputed amount was $1.9 million but that no

payments were owed because Zurich had previously paid $500,000 and no work had started to exhaust the advance. On November 18, 2024, Zurich notified Steinfeld that counsel had been retained, that Zurich would agree to mediate once its investigation was complete and it had the opportunity to reinspect the home's windows, and that it "remain[ed] optimistic that the parties c[ould] reach resolution in mediation." In December 2024, Zurich emailed Steinfeld that, because Steinfeld disagreed with Zurich's conclusion that no windows had been damaged, Zurich would reinspect the windows.

On January 31, 2025, Zurich emailed Steinfeld that it agreed to schedule mediation. Steinfeld's attorney responded that it was "welcome news." In April 2025, Zurich informed Steinfeld that its claim for coverage remained open and under ongoing investigation subject to a reservation of rights.

While the suit proceeded, the parties attended mediation on May 8, 2025. Zurich made a demand for appraisal on May 16, 2025, eight days after mediation concluded.

When Steinfeld opposed appraisal, Zurich filed a motion to compel appraisal and stay litigation. Zurich contended that the fire was a "covered *cause* of loss," that it continued to investigate and determine the "*amount* of the fire loss payable under the Policy," and that it had paid Steinfeld for water mitigation and soft costs but that the costs for fire and smoke damage had not been paid. Zurich maintained

4

that it hired an independent loss adjuster, industrial hygienist, building consultant, and two engineering firms to determine the extent of the fire damage and the cost to repair and replace that damage. Zurich also recognized that Steinfeld had engaged with a team of consultants and sent an extensive report to Zurich on September 20, 2023, with two incomplete cost estimates.

Steinfeld responded to the motion, arguing that Zurich failed to comply with the contractual deadlines within its own policy. Specifically, Steinfeld asserted that Zurich had 15 days following their notice of the claim to request a signed proof of loss. Steinfeld would then have 91 days to return a signed proof of loss and Zurich would then have 60 days from receipt of the proof of loss to issue a demand for appraisal. Steinfeld asserted that Zurich never commenced this contractual process, which it claimed constituted a "condition precedent to demanding appraisal," because it neither supplied a proof of loss nor requested that Steinfeld complete one.

Steinfeld also argued that coverage barriers would preclude an efficient and effective appraisal. It argued that Zurich was withholding the remainder of the $1.9 million net undisputed payments that were owed to Steinfeld and that appraisal would not remedy its breach or Zurich's extracontractual violations related to that issue.

Finally, Steinfeld argued that Zurich had waived its right to demand appraisal because it had not timely invoked appraisal after the parties' impasse. Steinfeld claimed that the parties had reached an impasse in February 2024 because (1) Zurich only released $500,000 instead of the full undisputed amount; (2) Zurich told Steinfeld it would "not be able to honor Mr. Steinfeld['s] request"; and (3) Steinfeld informed Zurich that they had retained counsel on March 1, 2024.

Based on the February 2024 impasse, Steinfeld argued Zurich failed to invoke appraisal within a "reasonable time" after the impasse.

Steinfeld points out that Zurich did not raise its demand for appraisal until May 2025—15 months after the parties reached an impasse and that Zurich's delay caused them prejudice by (1) having to retain counsel; (2) having to retain litigation experts to investigate and opine on the amount of damages; (3) causing the cancellation of their builder's risk policy and the cost increase; (4) causing soft costs associated with Zurich's delay; and (5) subjecting them to increased costs to build.

In reply, Zurich argued that the policy's deadline for appraisal had not expired because the deadline had not been triggered. Zurich argued that the proof of loss provision could be waived by the insurer and that it disagreed that the parties had reached an impasse in February 2024 or that Steinfeld showed prejudice.

6

After a hearing, the trial court denied Zurich's motion to compel appraisal. This mandamus proceeding followed.

## Standard of Review

Mandamus is an extraordinary remedy that is available only in limited circumstances. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). To secure mandamus relief, a relator must establish that (1) the trial court committed a clear abuse of discretion or violated a duty imposed by law and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co*., 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *In re Cerberus Cap. Mgmt. L.P*., 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (internal quotation marks and citations omitted).

Mandamus will not issue when there is a clear and adequate remedy at law. *Walker*, 827 S.W.2d at 840 (quotation marks and citation omitted). We review the adequacy of an appellate remedy by balancing the benefits of mandamus review against its detriments. *In re Team Rocket, L.P*., 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). We consider whether mandamus will "preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove

7

elusive in appeals from final judgments, and spare [the litigants] and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins*., 148 S.W.3d at 136. An appellate remedy is not inadequate merely because it may result in more expense or delay than obtaining a writ. *Walker*, 827 S.W.2d at 842.

## Motion to Compel Appraisal

Appraisal clauses, commonly found in homeowners' insurance policies, "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co*., 345 S.W.3d 404, 406–07 (Tex. 2011) (orig. proceeding). "Appraisals can provide a less expensive, more efficient alternative to litigation," and they "should generally go forward without preemptive intervention by the courts." *Id*. (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009)).

Trial courts have no discretion to ignore a valid appraisal clause. *Johnson*, 290 S.W.3d at 888 (holding that "appraisals should generally go forward without preemptive intervention by the courts"); *see In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the

8

appraisal provision."). Absent illegality or waiver, appraisal clauses are generally enforceable. *Universal Underwriters*, 345 S.W.3d at 407.

A trial court's abuse of discretion in failing to enforce an appraisal clause cannot be remedied by appeal. *See id*. at 412–13; *see also In re State Farm Lloyds*, 514 S.W.3d 789, 795 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (holding that trial court abused discretion by refusing to enforce valid appraisal clause and appellate remedy not adequate to correct error); *In re Liberty Ins. Corp*., 496 S.W.3d 229, 235 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding [mand. denied]) (same).

## A. Abuse of Discretion

Zurich argues that it timely invoked its appraisal rights under the policy and that the trial court abused its discretion by denying its motion to compel appraisal. Steinfeld responds that Zurich failed to invoke appraisal within the policy's deadline and that it did not satisfy a condition precedent to appraisal because it failed to provide Steinfeld with the sworn proof of loss form. Steinfeld further argues that Zurich's coverage defenses render appraisal ineffective and that Zurich waived its right to invoke appraisal because it waited nearly 500 days after the parties reached an impasse.

Steinfeld's arguments have been presented skillfully, and we have studied them with care. We nonetheless conclude that on the record before us, the trial court abused its discretion in denying Zurich's motion to compel.

### 1. Zurich has a contractual right to appraisal.

We interpret insurance policies pursuant to the same rules of construction that apply to other contracts. *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Policy No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021). "Each insurance policy must be interpreted according to its own specific wording, provisions, and coverages." *Progressive Cnty. Mut. Ins. Co. v. Saldivar*, 712 S.W.3d 691, 694 (Tex. App.—Houston [14th Dist.] 2025, no pet.). Our primary concern is to ascertain the intent of the parties as expressed in the insurance policy. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). We determine the parties' intent "by looking only to the four corners of the policy to see what is actually stated" therein. *Certain Underwriters at Lloyd's, London v. Henry Vogt Mach. Co. by & Through Pendergraft*, 712 S.W.3d 909, 927–28 (Tex. App.—Houston [14th Dist.] 2025, no pet.). We give the terms of the policy their "common, ordinary meaning." *Anadarko Petrol. Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 193 (Tex. 2019). Unless the policy dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *RSUI Indem. Co.*

10

*v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). We give effect to all of the words and provisions so that none is rendered meaningless. *Id.* "No one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Id.* (internal citation omitted).

If the parties offer conflicting constructions of the policy, and if only one party's construction is reasonable, the policy is unambiguous, and we will adopt that party's construction. *Id.* If both constructions present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous. *Id.* If the parties offer reasonable but conflicting interpretations, we adopt the construction that favors coverage. *Id.*

Under the heading "LOSS Conditions," Section B of the policy, entitled "Appraisal," states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand, within 60 days after our receipt of a signed, sworn proof of loss, for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

In Section C, entitled "Duties in the Event of Loss," the policy directs Steinfeld to "Send [Zurich] a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 91 days after our request. We will supply you with the necessary forms."

11

In Section E, entitled "Loss Payment," and subheading, "Claims Handling," the policy provides that Zurich will, within 15 days after it receives written notice of a claim,

> (a) Acknowledge receipt of the claim. . . ;
>
> (b) Begin any investigation of the claim; and
>
> (c) Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

Under the heading "General Conditions," Section C, subheading "Legal Action Against Us," the policy provides: "No one may bring a legal action against us under this Coverage Part unless: There has been full compliance with all the terms of this Coverage part[.]"

### 2. *The 60-day timeline in the appraisal clause did not preclude Zurich's appraisal rights.*

Zurich acknowledges that the appraisal clause states that appraisal may be demanded within 60 days after Zurich's receipt of a signed proof of loss, but because Steinfeld never provided the proof of loss, it argues that the appraisal clause's deadline was never triggered.

Steinfeld counters that the appraisal clause contains a 60-day deadline in which Zurich can request appraisal. Steinfeld contends that the 60-day deadline is triggered upon the occurrence of two events: (1) Zurich issues a request for a

12

signed, sworn proof of loss within 15 days of receiving a written notice of claim, and (2) Steinfeld submits a signed proof of loss within 91 days of receiving the request. Thus, according to Steinfeld, the appraisal clause independently outlines a maximum of 166 days to demand appraisal: (1) 15 days to request a proof of loss; (2) 91 days to provide the proof of loss; and (3) 60 days to request appraisal.

Steinfeld submitted the notice of claim to Zurich on July 25, 2023. Steinfeld thus argues Zurich had until August 9, 2023 (15 days later) to request a signed proof of loss, Steinfeld had until November 8, 2023 (91 days later) to submit the signed proof of loss, and both parties had until January 7, 2024 (60 days later) to demand appraisal. Because Zurich did not demand appraisal by January 7, 2024, Steinfeld argues Zurich waived its contractual right to appraisal.

Steinfeld's application of any appraisal deadline misconstrues the plain language of the policy. Even assuming that the 60-day time period to request appraisal constitutes a deadline, under its plain language, the policy clarifies that the 60-day period to request appraisal is based on the occurrence of another event—after Zurich's receipt of a sworn proof of loss. "After" is defined as "following in time or place." *See* MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/after (last visited October 28, 2025). Thus, the 60-day period to request appraisal is triggered when Zurich receives a signed, sworn proof of loss. It is undisputed that Zurich did not receive a sworn

13

proof of loss from Steinfeld and thus, the appraisal clause's temporal component was not triggered.

Accepting Steinfeld's interpretation that the 60-day time limit applied, notwithstanding the absence of receipt of a sworn proof of loss, ignores the phrase, "60 days **after** our receipt of a signed, sworn proof of loss." (emphasis added). But, in interpreting insurance policies, we do not ignore the plain language of the policy. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010) (stating that "[w]e must read all parts of the contract together, giving effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative").

Given the plain language of the policy, Zurich's request for appraisal in May 2025 was not precluded because the 60-day period to request appraisal had not been triggered.

To the extent Steinfeld argues that Zurich's failure to provide a proof of loss resulted in waiver of its appraisal rights, we disagree. Waiver is the intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that right. *See Universal Underwriters*, 345 S.W.3d at 407. Steinfeld has not pointed to any record evidence showing that Zurich intentionally waived its right to appraisal. Steinfeld also has cited no authority providing that the failure to request a proof of loss results in waiver of the insurer's appraisal rights or bars a

14

party from later demanding appraisal. And nothing in the policy dictates such a result.

### 3. *Zurich's appraisal right was not precluded by a condition precedent*.

Steinfeld next argues that Zurich is not entitled to appraisal because the policy clause requiring Zurich to request a signed, sworn proof of loss within 15 days of receiving a written notice of claim is a condition precedent to appraisal.

A condition precedent is generally defined under Texas law as "an event that must happen or be performed before a right can accrue to enforce an obligation." *See Solar Applications Eng'g v. T.A. Operating Corp*., 327 S.W.3d 104, 108 (Tex. 2010). To determine whether a condition precedent exists, the court must ascertain the intention of the parties, which can only be done by looking at the entire contract. *Id*. at 109. A covenant, by contrast, is "an agreement to act or refrain from acting in a certain way." *Solar Applications*, 327 S.W.3d at 108.

"In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Id*. at 109 (quoting *Criswell v. Eur. Crossroads Shopping Ctr., Ltd*., 792 S.W.2d 945, 948 (Tex. 1990)). Put simply, "conditions avoid coverage unless an insured does something." *PAJ, Inc. v. Hanover Ins. Co*., 243 S.W.3d 630, 635 (Tex. 2008). "Conditions are not favored in the law; thus,

15

when another reasonable reading that would avoid a forfeiture is available, we must construe contract language as a covenant rather than a condition." *Id*. at 636.

In asserting its argument, Steinfeld emphasizes two separate provisions of the policy: the appraisal provision and the claims handling provision, stating that Zurich will supply Steinfeld with the necessary form to provide a proof of loss. But Steinfeld does not explain with citation to authority how Zurich's contractual obligation to supply Steinfeld with the necessary proof of loss form creates a condition precedent to Zurich's appraisal rights.

The claims-handling provision does not contain language traditionally associated with a condition precedent. *See Criswell*, 792 S.W.2d at 948 ("In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included."). And none of the cases Steinfeld cites suggests that failure to provide a proof of loss is a condition precedent to appraisal given the language in the policy at issue.[2]

---

[2] Steinfeld cites the following cases in support of the position that a proof of loss may be a condition precedent in insurance policies. *See Am. Teachers Life Ins. Co. v. Brugette*, 728 S.W.2d 763 (Tex. 1987); *Lemon v. Hagood*, 545 S.W.3d 105, 118 (Tex. App.—El Paso 2017, pet. denied); *Hous. Auth. of City of Alice v. Tex. Mun. League Self-Ins. Fund*, No. 04-17-00465-CV, 2018 WL 3747904 (Tex. App.—San Antonio Aug. 8, 2018, pet. denied) (mem. op.). Although these cases generally state that an insured's failure to comply with a proof loss is a condition precedent to suit or recovery on the policy, the issue here is whether Zurich's contractual obligation to provide a proof of loss form and to request the completion of the

16

With no record evidence to show that Zurich waived its right to seek appraisal, and no language in the appraisal provision indicating that securing a completed proof of loss is a condition precedent to appraisal, we cannot conclude that Zurich's failure to request a proof of loss from Steinfeld precluded its contractual ability to seek appraisal or amounted to waiver of its contractual right of appraisal. *See In re Acceptance Indem. Ins. Co.*, 562 S.W.3d 655, 663 (Tex. App.—San Antonio 2018, orig. proceeding) (rejecting real party's claim that insurer's alleged breach of insurance policy excused real party's compliance with appraisal provision in policy); *In re State Farm Lloyds, Inc*., 170 S.W.3d 629, 635 (Tex. App.—El Paso 2005, orig. proceeding) (explaining that insurer's alleged failure to comply with some of policy requirements "does not evidence an intent to dispense with" appraisal requirements under policy).

We conclude that the claims-handling provision requiring Zurich to request a sworn proof of loss is not a condition precedent to Zurich's contractual right to appraisal. And that nothing in the record indicates Zurich waived its contractual right to appraisal by failing to request a proof of loss.

---

form within 15 days of receiving a notice of claim is a condition precedent to its contractual right to appraisal. Steinfeld's reliance on these cases is thus misplaced.

17

### 4. *Coverage defenses do not preclude appraisal.*

Steinfeld next argues that Zurich's reliance on coverage defenses precludes a successful appraisal process. Steinfeld seems to argue that because Zurich has made contradictory statements on whether it is denying or accepting coverage, appraisal cannot be invoked. However, even if Zurich has denied coverage, appraisal may still be requested. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 893 (Tex. 2024) ("Even if the appraisal here turns out to involve not just damage but liability questions, that does not mean appraisal should be prohibited as an initial matter."); *In re SureChoice Underwriters Reciprocal Exch.*, 702 S.W.3d 876, 884 (Tex. App.—Houston [1st Dist.] 2024, orig. proceeding) (concluding that appraisal was not precluded where insurance policy provided for appraisal when parties "fail to agree on the amount of loss" and case presented issues involving coverage); *Liberty Ins.*, 496 S.W.3d at 234–35 (concluding that insurer's denial of insurance claim did not amount to waiver of its right to appraisal). We thus disagree with Steinfeld that coverage defenses preclude appraisal.

### 5. *Zurich did not unreasonably delay in demanding appraisal.*

Steinfeld next argues that Zurich waived its right to appraisal because it unreasonably delayed in requesting it. Steinfeld conditions its waiver argument by maintaining that the parties reached an impasse in February 2024, and Zurich

unreasonably delayed in demanding an appraisal. Because Zurich waited until May 2025 to request appraisal—a 15-month delay from February 2024—Steinfeld argues Zurich waived its right to appraisal. Steinfeld further argues that Zurich's delay in requesting appraisal resulted in prejudice because their builder's risk policy was cancelled and Steinfeld had to (1) retain counsel and litigation experts, (2) pay over $1,000,000 in soft costs, and (3) pay increased prices to rebuild. Under the undisputed facts presented here, we disagree that Zurich waived its right to appraisal.

Waiver requires the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Universal Underwriters*, 345 S.W.3d at 407. The party challenging the right to appraisal—Steinfeld—has the burden of proof. *See id*. at 411; *In re Allstate Vehicle & Prop. Ins. Co.*, 549 S.W.3d 881, 889 (Tex. App.—Fort Worth 2018, orig. proceeding). To establish waiver, the party challenging the appraisal must show that the parties reached an impasse, that is, "a mutual understanding that neither will negotiate further." *Universal Underwriters*, 345 S.W.3d at 410.

Impasse is reached when "the parties have exhausted any prospect of reaching an agreement and further discussion would be fruitless." *In re QBE Specialty Ins. Co*., No. 01-19-00164-CV, 2020 WL 6140180, at *4 (Tex. App.—Houston [1st Dist.] Oct. 20, 2020, orig. proceeding) (mem. op.). "Knowledge that

19

the insured disagrees with the insurer's position as to the claim is not sufficient to establish impasse." *Id.* And relevant here, "[i]mpasse arises only if *both* parties 'believe additional negotiations would be futile.'" *Id.* (quoting *In re Acceptance Indem. Ins. Co.*, 562 S.W.3d 655, 660 (Tex. App.—San Antonio 2018, orig. proceeding)) (emphasis in original).

Moreover, even after an impasse, to establish waiver, a party must establish that an unreasonable amount of time passed after the parties reached an impasse and the demand for appraisal, and that the delay resulted in prejudice. *Universal Underwriters*, 345 S.W.3d at 411; *In re Am. Nat'l Prop. & Cas. Co.*, 582 S.W.3d 400, 406 (Tex. App.—San Antonio 2018, orig. proceeding). As the supreme court has specifically held, "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand an appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself." *Universal Underwriters*, 345 S.W.3d at 411.

Steinfeld argues that the parties reached an impasse in February 2024 because (1) Zurich agreed to issue its first payment but instead of releasing the full undisputed amount, Zurich only released $500,000; (2) Zurich told them that it would "not be able to honor [Mr. Steinfeld and Ms. Winthrop's] request;" (3) Steinfeld informed Zurich on March 1, 2024 that they had retained counsel; and

(4) Steinfeld presented a May 31, 2024 report to Zurich showing a total reconstruction cost of $4,383,352.74. Steinfeld argues that these four factors "delineate the moment that the parties reached an impasse." We disagree.

While these four events may reflect that Steinfeld believed further negotiations would be fruitless, Steinfeld had to show that both parties believed they were at an impasse. *See id.* at 409–10 (stating that impasse reached when it becomes apparent to both sides that they disagree as to damages and that further negotiations are futile). None of the events listed by Steinfeld show that both parties believed that further negotiations would be futile or of no effect. *See id.* at 409. To the contrary, the record reflects that the parties continued to negotiate well into May 2025.

The record shows that from 2023 through 2024, the parties were communicating to resolve the claim, inspecting the property, communicating with building consultants, and attempting to negotiate the loss. Steinfeld requested mediation in August 2024 and filed suit shortly after in October 2024. Even with the pending suit, Zurich agreed in November 2024 to participate in mediation, subject to further inspections. On January 31, 2025, Zurich emailed Steinfeld, stating that it would move forward with mediation without completing a window reinspection and "I trust this is good news and is considered progress." Steinfeld responded, "Welcome news, yes." And, after the May 2025 mediation and

21

Zurich's request for appraisal eight days later, Steinfeld sent a June 24, 2025 letter to Zurich requesting that Zurich pay the quoted premium cost for a builder's risk policy and inquiring whether Zurich intended to undertake additional inspections.

On this record, we cannot conclude that Steinfeld established the existence of a mutual understanding that neither party would negotiate further, and that an impasse occurred in February 2024. *See id*. at 410 (holding that, when insurer left file open for further discussion, court would not "infer waiver where neither explicit language nor conduct indicates that such was the party's intent").

Steinfeld has not directed us to any Zurich communication that further negotiations would be futile or that it was unwilling to negotiate further after February 2024. Steinfeld provided a new damage report and estimate in May 2024 prompting a reinspection of the property. And even after Steinfeld filed suit months later in October 2024, the record shows that the parties continued their investigation and discussions well through the mediation on May 8, 2025. When the parties failed to settle at mediation, Zurich requested an appraisal eight days later.

We conclude that Zurich's request for an appraisal eight days after mediation was not an unreasonable delay, and that Zurich did not waive its appraisal rights.

## B. Adequate Appellate Remedy

Refusal to enforce an appraisal clause is an abuse of discretion that cannot be remedied by appeal. *Id.* at 412 ("[M]andamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim.") (citation omitted); *see Liberty Ins.*, 496 S.W.3d at 235 ("We conclude that the trial court abused its discretion by denying [the insurer's] motion to compel appraisal and that [the insurer] has no adequate appellate remedy to correct this error.").

We thus hold that Zurich lacks an adequate appellate remedy and mandamus relief is appropriate on the issue of appraisal.

## Abatement

Zurich filed a joint motion to compel appraisal and to stay litigation in the trial court. Because the trial court denied Zurich's motion to compel, there was no need for the court to consider the necessity of a stay during appraisal. Given our conditional grant of mandamus relief to compel appraisal, Zurich may re-urge in the trial court its request for stay pending the appraisal process.

## Conclusion

We conditionally grant mandamus relief as to Zurich's request to compel appraisal. We direct the trial court to (1) vacate its June 25, 2025 order denying Zurich's motion and (2) order the parties to engage in the appraisal process. The writ will issue only if the trial court fails to do so.[3] We withdraw our stay orders dated September 17 and November 6, 2025.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Guerra, and Gunn.

---

[3] Steinfeld argues that because Zurich prayed only for vacatur of the trial court's order denying its motion to compel, we may not grant mandamus relief ordering the trial court to compel appraisal. We disagree. Zurich filed a motion to compel appraisal requesting, among other things, that the trial court enter an order "compelling [Steinfeld] to select an appraiser and to participate in the contractual appraisal process within five days of the order." We have concluded that the trial court abused its discretion in failing to grant the motion and compel the parties to participate in appraisal. In the prayer of its mandamus petition, Zurich states that when as here, an appraisal clause is properly invoked, the court "lacks discretion and must grant the motion to compel that party to participate." We thus conclude that Zurich's prayer sufficiently prayed for vacatur and relief directing the trial court to enforce the appraisal clause and compel the parties to participate in the appraisal process.

24